Arthur Ashton, Respondent, v. Margaret Sweeney and
 Frank Sweeney, Respondents, and John Stevens,
 Petitioner.
 John Stevens, Petitioner Here.

Gen. No. 10,643.

Opinion filed April 20, 1953. Released for publication May 12, 1953.

ALLEN, MATTHEWS, JORDAN & DEAN, of Aurora, for petitioner; G. E. JORDAN, and OLNEY C. ALLEN, both of Aurora, of counsel.

WILLIAM C. O'BRIEN, of Aurora, for certain respondent; WILSON D. BURNELL, DONALD L. PUCKETT, and JOSEPH H. BARNETT, all of Aurora, of counsel.

L. J. MOUDRY, of Sycamore, and CARBARY & CARBARY, of Elgin, for certain other respondents; GEORGE D. CARBARY, and PAUL M. HAMILTON, both of Elgin, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

Arthur Ashton, plaintiff and respondent herein, filed his suit in the circuit court of DeKalb county, Illinois against Margaret Sweeney and Frank Sweeney, defendants and respondents herein, and against John Stevens, defendant and petitioner herein, for personal injuries arising out of an automobile accident.

The complaint consists of five counts.

Count one charges John Stevens with negligence in the operation of his automobile causing the plaintiff's injuries.

Count two charges the defendants Sweeney with negligence which caused the plaintiff's injuries arising out of the operation of their automobile.

Count three charges the Sweeneys with willful and wanton misconduct.

Count four charges all the defendants with negligence that caused the plaintiff's injuries.

138

Count five charges all the defendants with willful and wanton misconduct.

The defendants by their answer denied all acts of negligence and willful and wanton misconduct. The issues were submitted to a jury and they returned two verdicts. One verdict found the defendants, Margaret and Frank Sweeney, guilty, and assessed plaintiff's damages at $48,000. The other verdict found the defendant John Stevens not guilty. The defendants Sweeney filed their motion for a new trial. The motion contained the usual assignments of error. Later they filed an amended motion for a new trial based on newly discovered evidence of Beatrice Wensland, who was an eyewitness to the accident. The facts disclosed in her affidavit in support of the motion corroborate the testimony of all the defendants that they are not liable for the plaintiff's injuries. The plaintiff filed no motion for a new trial. The court awarded the defendants, Margaret and Frank Sweeney, a new trial, and in the same order awarded a new trial as to the defendant, John Stevens. The trial judge at the time he rendered his decision granting a new trial stated:

"In the case of Ashton v. Stevens, No. 51–48; this matter stands before the Court on a motion for a new trial and other motions argued on July 28; the Court has spent a great deal of time carefully studying the record and the authorities cited; this case is extremely close on the question of wanton and willful conduct, and the Court feels there should be a re-trial of same, especially in view of the unusually large verdict and the newly discovered witness. Accordingly, the motion for a new trial is granted and the other motions denied."

Defendant Stevens has appealed from the order granting a new trial as against him. The defendants Sweeney contend that the trial court properly granted a new trial as to all defendants. The plaintiff Ashton

contends that if a new trial should be granted, it should be granted as to all defendants. He also contends by cross-error that the trial court erred in setting aside the verdict as against the Sweeneys, that the jury's verdict be permitted to stand, and that the cause be remanded for further proceedings in due course.

██ The verdict entered against the Sweeneys being general in form must be sustained by the counts charging willful and wanton misconduct. (*Trumbo v. Chicago, B. & Q. R. Co.,* 389 Ill. 213; *Countryman v. Sullivan,* 344 Ill. App. 371.)

██ ██ It is conceded by all counsel that the trial court may, after a verdict, grant a new trial to one or more of the defendants as justice may require. (*Illinois C. R. Co. v. Foulks,* 191 Ill. 57; *Pecararo v. Halberg,* 246 Ill. 95.) The first question to be answered is, did the trial judge abuse his sound judicial discretion in granting a new trial as against the defendant John Stevens. This requires an analysis of the testimony in all its aspects most unfavorable to the defendant Stevens.

The uncontroverted facts surrounding the accident are as follows: on June 5, 1950, at about 2:00 p. m., the plaintiff was working as the east end flagman for the State of Illinois during repairs being made on Illinois State Highway 34 near Somonauk, Illinois. The highway at that place extends east and west and is twenty feet wide with two traffic lanes. The terrain is flat and the road straight. The day was clear and warm. The highway maintenance crew were engaged in repairing the eastbound traffic lane by filling in cracks with tar and sand. The equipment used consisted of two trucks headed east and a tar kettle on wheels. The lead truck pulled the tar kettle, and the rear truck was filled with sand. The distance between the trucks varied from 100 to 200 feet. There were several men working on the repairs. These men and the flagmen were working under the direction of William Campbell, foreman. East and

west of the repair zone two flagmen were stationed to protect the workmen and the travelling public. The usual warning signs were in place some distance east and west of the flagmen. The defendant Stevens was driving east. He stopped his car on flag by the west end flagman. He was permitted to proceed in the westbound traffic lane around the repair zone and after he had passed the repair zone, he proceeded diagonally into the eastbound traffic lane. Ashton attempted to flag him down and they had some words as he passed him. He proceeded some distance down the highway, then backed his car up and stopped in the center of the eastbound traffic lane, a short distance in front of the lead truck which was standing still. He then had some conversation with Ashton and Campbell who were then standing in or near the center of the highway. Stevens, after the conversation, proceeded east and at about that time Ashton was struck by the Sweeney car also proceeding east, somewhere in the westbound traffic lane. As a result Ashton received the injuries complained of. Stevens stopped his car after seeing the accident in his rear-view mirror, and went into the next town to procure medical assistance. The Sweeney car had stopped after being flagged down by the west end flagman and had proceeded at the flagman's direction around the repair zone. Their car was being driven by Margaret Sweeney, wife of Frank Sweeney, who was also in the front seat of the car, at a speed not exceeding twenty miles an hour. The Sweeney car struck the plaintiff somewhere on the westbound traffic lane or near or off the north edge of the highway. Where and how he was struck is a highly controverted question of fact, the testimony being wholly irreconcilable. As a result of the accident Ashton received a comminuted fracture of both bones of his right leg and various minor injuries due to lacerations on his body. The fracture of the tibia

141

did not heal. He was placed in a cast and later used crutches after the cast was removed. He was still under medical treatment at the time of the trial and there had been no healing of the tibia fracture at that time. His medical expenses amounted to approximately $1800. It appeared that a bone-graft operation would still be necessary and would probably be successful to heal the tibia fracture. This would cost $500 plus hospital expenses. He has not been able to work for two years. At the time of the accident he was earning $175 per month.

The testimony on the material issue as to who was at fault is highly conflicting. It is impractical to state all the relevant testimony in detail as disclosed by the abstract, but the substance of it follows.

William Edward Campbell testified that after Stevens backed up his car, he and Ashton were standing alongside the car, near the center of the highway; that he was conversing with Stevens; that neither he nor Stevens was angry; that he gave Stevens his name and address; that he did not see the Sweeney car approaching; that Stevens started off rapidly, his wheels spinning; that he left burnt rubber marks on the pavement; that at the time Stevens started away, Ashton took one step back; that he heard a thud and could see that Ashton had been hit by another car "that was back behind us"; that Stevens stopped his car about 500 feet ahead, backed up, and said he would stop in town and call a doctor; that Stevens at no time was out of his car.

Margaret Sweeney testified that she did not see the plaintiff until he started to back up north across the center line of the pavement; that as she observed Ashton she blew her horn and her husband "hollered at him, but he kept backing up further north into the west traffic lane"; that when she first saw him, he was twenty or forty feet away; that she then swerved her

car to the left; that she was in first speed. She was not too definite about the distances, as it all happened too rapidly, but she thought she applied the brakes when she first saw Ashton; that after the collision her car did not proceed over half its length; that when she stopped her car, it was partly off the highway to the north; that her right-front fender came in contact with Ashton; that she never saw Stevens or his automobile; that Ashton had a red flag in his hand.

Earnest Roy Holmes testified that he was the west end flagman; that he saw Ashton try to flag down Stevens; that he saw Stevens and Ashton talking together and that Ashton was standing at the side of Stevens' car; that he did not observe whether or not Campbell went over to the car; that he saw the Sweeney car strike Ashton and that Ashton was on the north edge of the pavement at that time; that he thought that he had just stepped onto the shoulder; that it looked as if the Sweeney car was trying to avoid striking him as it swerved north; that "he (Ashton) stepped back and they hit him"; that he watched Ashton walk to the north side from the center of the highway; that the Sweeney car was not going at any time more than fifteen miles per hour.

John Stevens testified that the accident occurred about 2:00 p. m.; that he proceeded around the repair zone with part of his car on the shoulder; that he was going about 25 miles per hour; that the repair zone was about 300 feet long; that he did not see Ashton attempt to flag him down with a red flag; that he did not drive over any red flag; that when he first saw Ashton he was about 50 or 100 feet ahead of the lead truck; that before he reached the flagman he went over into his own lane of traffic and it was then he first noticed Ashton violently waving his flag; that there was no obstruction or traffic in front of him and he saw no reason for stopping; that as he went by, the flagman made a

143

defamatory remark to him; that he then proceeded in his lane of traffic for about 100 feet, then backed up to within 25 feet of Ashton; that he got out of his car and asked for Ashton's name and address; at that time he was standing on the shoulder, 75 to 100 feet east of the repair zone; that he had some rather heated conversation with Ashton; that he told Ashton that he did not think he had any right to talk to him in that way; that Ashton then called over the foreman, Mr. Campbell; that during the conversation with Ashton and Campbell they were standing near the center of the pavement; that as it appeared that he was getting into an argument he got into his car, said "Phooey," and proceeded east down the highway; that he was driving a 1949 Roadmaster Buick with dynaflow transmission; that he didn't "believe it's possible to spin the wheels on that car from a standing start on a dry pavement. I've tried it several times. On that day I made a normal start." He further testified that with this transmission "you can't take off with a jerk. As you feed it gas, those blades start working, the transmission builds up speed, and it takes time to build up speed with the car. You can't take off with a jerk and spin the wheels." He further testified that when he got down the road about 75 feet, he saw Ashton going over the hood of the Sweeney car; that this was a matter of seconds; that the accident happened at the approximate place he had been; that Ashton, after being struck, was virtually in the air on the hood of the car; that Ashton dropped off the automobile and crawled toward the center line of the road. Arthur Ashton testified that he was sixty-six years old; that he first saw Stevens going around the repair zone; that he was then standing on the north shoulder north and east of the lead repair truck; that he attempted to wave Stevens down with a flag; that Stevens continued to drive at about 60 miles an hour, passed him and went down the road some 200 or 300

feet; that Stevens then backed up and asked the witness for his name and address which he refused to give; that the witness then motioned Campbell to come up; that Campbell and Ashton had some conversation and went over and stood along the north side of Stevens' car about a foot away from it; that he was near the center line of the pavement; that Stevens "zoomed his car ahead" after some further conversation; that Campbell stepped back to get Stevens' license number; that he does not know what happened after that; that he did not see the car that struck him or hear any horn or hear a shout from anyone in it. On cross-examination Ashton testified that he did not think he was ever south of the center line of the pavement but thought he was one or two feet north of it; that he might have stepped back one foot but he did not think that he had and knew that he had not walked back two or three steps; that he was watching Campbell; that the manner in which Stevens drove away did not disturb him; that when Stevens drove away he remained standing where he was and was struck.

John Anderson testified that he was on a truck working at the repair zone; that he saw Stevens' car; that during the conversation between Stevens and Campbell, Campbell and Ashton were standing next to the Stevens' car, practically leaning on it; that the Stevens' car started off "with a terriffic speed"; that Campbell stepped back from the car but did not get back as far as Ashton did; that the Sweeney car "caught him (Ashton) with its front fender"; that the impact took place about the middle of the north lane; that he never saw Stevens get out of his automobile; that the Sweeney car was going very slowly; that he saw Mrs. Sweeney pull the car to the left before the accident; that as Ashton stepped back Mrs. Sweeney pulled her car over "to avoid it"; that after Stevens' car left "Ashton was facing south; that he turned toward the

145

east and walked north; that he was still about the center of the north slab; that the Sweeney car stopped almost immediately after the collision; that Ashton came over the right fender in about the middle of the car."

Frank Sweeney testified that they, on the flagman's signal, went around the repair zone in the westbound traffic lane; that he noticed the Stevens' car stopped; that he saw Ashton and Campbell about the car and thought they were leaning on it; that his car was proceeding about 15 miles per hour; that as he came close to the Stevens' car, it left; that he did not observe much about it; that when the Stevens' car started, Ashton and Campbell backed away from the car; that Ashton backed north and the Sweeney car was about twenty feet from the Stevens' car when it started; that as Ashton started to back up, Mrs. Sweeney pulled over to the left onto the shoulder, blew the horn, and applied the brakes and he started hollering; that his car was in low gear; that it travelled about a car's length after it struck Ashton; that when the car struck Ashton it was going at an angle; that Ashton continued to back up; that after the accident Ashton was in the middle of the north half of the road immediately behind the Sweeney car; that he did not see any red flag in Ashton's hand; that he did not see Stevens get out of the car when he came back after the accident; that there was no dent in his car; that the radio antenna was broken. On cross-examination he testified that it was his impression that Ashton and Campbell were leaning on the automobile; that he thought that Ashton at one time had his hands on the window of the car but he was not sure.

The affidavit of Beatrice Wensland in support of the motion for a new trial states: that she was behind the Sweeney car at the time it was stopped by the flagman; that she followed it about four lengths behind and

at about the same rate of speed, ten to fifteen miles per hour; that as she reached a point even with the tarring operations, she observed an automobile about 75 feet east parked on the shoulder on the south side of the road; that she saw a man behind the parked automobile, holding a red flag in his right hand; that the flagman was a foot or so from the edge of the pavement; that she observed the parked car leave at a rather unusually rapid rate of speed; that as it proceeded east the flagman stepped back a step or two, turned left, and walked toward the north shoulder of the road looking back over his right shoulder toward the departing car; that as the parked car departed, the Sweeney car started to move into the eastbound lane and reached a point where the front wheels were starting across the black line; that at that time the flagman was walking north looking at the departing car and was in the center of the eastbound traffic lane when the Sweeney car started to swerve in an attempt to avoid striking him; that the flagman continued to walk north, still looking over his right shoulder, and "walked into the right front fender of the Sweeney car; at that time the left front wheel of the Sweeney car was on the north shoulder." The affidavit further stated that she then drove up and asked if she could assist and was told that she could not and she left; that she did not know about the lawsuit involving the accident until she read the verdict in an Ottawa newspaper.

██ It has been said by our reviewing courts that applications for new trials are addressed to the sound judicial discretion of the trial court and it may grant new trials as at common law, such discretion to be exercised as will best answer the ends of justice. This discretion is now subject to review under provisions of section 77 of the Civil Practice Act (Ill. Rev. Stats., 1951, ch. 110, par. 201 [Jones Ill. Stats. Ann. 104.077]). This court has held that where a motion for a new trial

147

is granted based on questions of fact and the court feels that the verdict of the jury is not sustained by the evidence, the courts of review will not set aside the order of the trial court granting a new trial unless the record shows a clear abuse of its discretion. (*Adamsen v. Magnelia,* 280 Ill. App. 418.)

The case of *In re Estate of Velie,* 318 Ill. App. 550, involved an appeal from an order of the trial court granting a new trial. The court said that it appears from the written remarks of the trial judge that he was dissatisfied with the evidence and that was the reason why he granted a new trial. The court further said on page 552 of the opinion:

. . . "In this connection, it is to be remembered that the trial court has a tremendous advantage in its opportunity to observe witnesses as well as the general conduct of a trial, and this is particularly true with respect to cases to be determined upon questions of fact."

The Appellate Court held that the trial court did not abuse its discretion in awarding a new trial.

Based on the above rules of law, it is quite rare for the reviewing court to set aside the order of the trial court granting a new trial. It is generally held that the trial court has not clearly abused its discretion. There are, however, a number of cases to the contrary. In *Goodrich v. Sprague,* 314 Ill. App. 671, the plaintiff administrator obtained a verdict against the defendant railroad for wrongful death. The trial court awarded the defendant a new trial. On appeal the Appellate Court held that there was such a preponderance of evidence in the plaintiff's case, that the trial court was not justified in granting the defendant a new trial and reversed the case.

*Randolph v. City of Chicago,* 315 Ill. App. 85, involved a case where the plaintiff obtained a verdict

148

against the City of Chicago for $2,500 due to injuries sustained by the plaintiff when he fell through a coal hole in the city sidewalk. The trial court awarded the defendant a new trial. An appeal was taken from this order. The trial court stated its reasons for granting the new trial as follows:

"I consider there is sufficient evidence in the record to prove either actual or constructive notice."

The Appellate Court further states that only where the trial court has abused its discretion or proceeded upon some clear or manifest misapprehension of a supposed or contrary rule of law will an order for a new trial be reversed. The court further says that there was no conflict in the evidence and that the court was wrong in holding that there was no actual or constructive notice to the city of the defect in its sidewalk, and that it was an abuse of the court's discretion to have allowed defendant's motion for a new trial.

*Necheles v. Jefferson Ice Co.,* 336 Ill. App. 153, was a suit filed by the administrator for wrongful death. There was a verdict in favor of the defendant and the court awarded the plaintiff a new trial. The reviewing court held that the evidence supported the verdict for the defendant and that the allowance of the plaintiff's motion for a new trial was an abuse of discretion.

In *Kavanaugh v. Washburn,* 320 Ill. App. 250, this court had before it a matter concerning the discretion of the trial court which granted a new trial to the defendant when the plaintiff had obtained a verdict against him for personal injuries. From the case it appears that the trial court awarded the new trial on the ground of erroneous instructions given by the court at the request of the plaintiff. The Appellate Court does recognize the distinction between such motions when involving questions of fact and of law, and cited the *Velie* case, *supra,* in support thereof. The court held that the instructions were proper and reversed the

order of the trial court granting a new trial and remanded the case directing the court to enter judgment on the verdict.

In the case of *Franks v. Childs,* 345 Ill. App. 83, an abstract opinion, recently decided by this court, involving a case arising out of an automobile accident where the plaintiff received personal injuries, the plaintiff received a verdict. The trial court granted defendant's motion for judgment notwithstanding the verdict and granted in the alternative defendant's motion for a new trial. The plaintiff was driving his automobile on a state highway. The defendants intestate had run a stop sign on a road entering the state highway. The judgment notwithstanding the verdict or, in the alternative, a new trial, was awarded defendant on the grounds that the plaintiff was guilty of contributory negligence which barred his recovery or in the alternative permitted the defendant to have a new trial. We held that this question was one of fact and the verdict in effect, finding that the plaintiff was not guilty of contributory negligence, should not be disturbed as it was not palpably and manifestly against the weight of the evidence. We said on page 11 of the opinion:

". . . The jury by their verdict and by the special interrogatory, found that the plaintiff was not guilty of contributory negligence. We cannot say that their findings are so unreasonable, arbitrary, and not based on the evidence, that it would justify the trial court in granting the defendant a new trial. The finding of the jury is binding on this court under the facts and the law as disclosed by this record, and should not be disturbed. The plaintiff is entitled to have the benefit of his verdict."

We reversed the cause and directed the trial court to enter judgment on the verdict in favor of the plaintiff.

150

■■ From a review of the evidence contained in the record in the instant case, it is difficult to see how the jury could have entered any other verdict than that of not guilty as to the defendant Stevens. The only thing that he did was to drive his car away rapidly just prior to the time of the accident. Ashton testified that this fact did not disturb him and in effect had nothing to do with the accident. There is not any evidence that Ashton was off balance and for that reason stepped backwards because of the leaving of the Stevens' car. It is true there is some testimony by other witnesses who were quite a distance away that Ashton was leaning on the Stevens' car. This is not corroborated by the testimony of the plaintiff or Campbell who were there. The jury was fully justified in finding by its verdict, which is supported by an abundance of evidence, that Stevens was not guilty of any negligence that proximately contributed to the plaintiff's injury. On the question of fact passed on by the jury, the reasons assigned by the trial judge in awarding the new trial are not applicable to Stevens. The judge states as his reasons that the case is extremely close on the question of willful and wanton misconduct, that the verdict is unusually large, and that there was newly discovered evidence. The question of willful and wanton misconduct, the size of the verdict, and the testimony of the newly discovered witness had nothing to do with Stevens' case. No one contends that a verdict against Stevens for willful and wanton misconduct could be sustained. The verdict of the jury was clearly supported by the preponderance of the evidence. The defendant Stevens was entitled to the benefit of his verdict. The court has no right to substitute its judgment for that of the jury even though it might reach a different conclusion, because that would be invading the constitutional prerogative of the jury. (*Bliss v. Knapp*, 331 Ill. App. 45.) To award a new trial as

against Stevens in the instant case, would be unjust and is not within the sound judicial discretion of the court. For the above reasons we believe that the court committed error in awarding the new trial as against Stevens.

Criticism is levelled against certain instructions. Plaintiff Ashton contends that certain of the instructions given by the court and tendered by defendant Stevens were improper and influenced the jury, and consequently the trial court properly granted a new trial as to defendant Stevens.

██ It is a general rule that if the impropriety of certain instructions is called to the attention of the trial court by way of motion for a new trial, it is within the sound discretion of the trial court to correct the error and grant a new trial.

██ Instruction eleven, complained of, states in substance that if the jury believes that the plaintiff left a place of safety and proceeded into a place of danger on the highway in question, then the plaintiff was guilty of negligence, and he cannot recover against Stevens. Ashton contends that the court singled out certain facts and then directed a verdict, and that this constituted reversible error. There was substantial evidence that the facts stated in the instruction were true, and Stevens had a right to have the jury instructed on his theory of the case. We believe the instruction was properly given.

██ Ashton also contends that the court should not have given Stevens' instruction twenty which stated that if the plaintiff failed to prove his case by a preponderance of the evidence, or if the evidence was evenly balanced, the plaintiff could not recover. This instruction was criticized by this court in *Healy v. New York Cent. R. Co.*, 326 Ill. App. 556. It has been approved in *Alexander v. Sullivan*, 334 Ill. App. 42, 3rd Dist., and by the Supreme Court in *Koshinski v.*

*Illinois Steel Co.*, 231 Ill. 198. We believe that this instruction was proper, and if not, it is harmless error and would not require reversal of this case.

██ ██ Ashton further contends that defendant Stevens' instruction twenty-one should not have been given. This instruction tells the jury that even if they believe that Stevens was negligent in driving by the flagman but further believe that thereafter Stevens stopped his car, the negligence, if any, of Stevens in driving by the flagman, was not the proximate cause of the injuries, and the jury will have no occasion to consider the manner in which Stevens drove his car past the flagman or the trucks. Ashton contends that this instruction erroneously signals out certain evidentiary facts. From a review of all the instructions, it appears to us that the jury were correctly instructed as to the law and should not have been confused or misled by the giving of any of the instructions. We think the instructions given were proper but if otherwise, it was harmless error and would not prejudice the jury against Ashton. (*Kavanaugh v. Washburn*, 320 Ill. App. 250.)

Margaret Sweeney and Frank Sweeney filed their motion to strike the additional abstract and cross-errors filed by respondent Arthur Ashton. Arthur Ashton filed his objections to said motion and the motion was taken with the case.

██ It will be noted that all parties by their counsel stipulated and agreed that Arthur Ashton might amend the record on appeal by including therein the additional transcript of proceedings. Respondents Sweeney, having stipulated to the amending of the record on appeal, cannot now move to strike the said additional abstract of record filed by Arthur Ashton.

That portion of the motion of respondents Margaret Sweeney and Frank Sweeney to strike the additional abstract is denied.

153

On December 10, 1952, this court entered an order granting the petition for leave to appeal by petitioner John Stevens. Under Supreme Court Rule 30 [Ill. Rev. Stats. 1951, ch. 110, § 259.30; Jones Ill. Stats. Ann. 105.30], which provides for appeals from order granting a new trial, the ruling by this court was final and having been granted, said rule provides in part as follows:

"If the petition shall be granted, the proceedings shall be stayed upon the filing of bond by the petitioner in an amount, and subject to conditions, to be fixed by the court or judge, and the case shall be deemed to be *pending* on appeal, and briefs shall be filed in the court of review as provided by rules." [Italics added.]

It is contended by respondent Ashton that the Illinois Civil Practice Act and the Supreme Court rules make no provision for notice of cross-appeal or for taking a cross-appeal where a motion for leave to appeal is filed and therefore no such notice of cross-appeal or cross-appeal is required.

As we interpret the rules, no cross-appeal can be taken where a petition for leave to appeal is filed until such time as the petition is allowed by the Appellate Court or a justice thereof, pursuant to Supreme Court Rule 30. The reason therefore is obvious. If the petition for leave to appeal is denied, there is no appeal pending before the Appellate Court to support a cross-appeal.

Rule 30 specifically provides, as hereinabove set forth, that when the petition is granted, *the cause shall be deemed to be pending on appeal.* In such event the cause is no different than any other cause on appeal, and as we interpret this rule, thereafter any party desiring that affirmative relief be granted by this court, must proceed as in any other cause when notice of appeal is given, and comply with the Supreme Court rules with reference to cross-appeals and notice thereof.

154

The reason for this rule is apparent. How else would the respondent to such a plea for affirmative relief have an opportunity to reply to the cross-errors assigned?

If any affirmative relief is requested by respondent Ashton, he is required to give notice of cross-appeal and comply with the rules with reference to cross-appeals under Supreme Court Rule 35 [Ill. Rev. Stats. 1951, ch. 110, § 259.35; Jones Ill. Stats. Ann. 105.35] which provides that on cross-appeals, the party desiring to prosecute the same shall, within ten days after the notice of appeal, serve upon opposing counsel a notice of the cross-appeal.

An examination of the brief of said respondent Ashton discloses that he is requesting affirmative relief, namely, that the order of the trial court granting a new trial as to defendants Sweeney be set aside. Inasmuch as respondent Ashton has not complied with Supreme Court Rule 35, the motion of respondents Sweeney with respect to that portion asking that the cross-errors assigned by respondent Ashton be stricken, is well taken, and the cross-errors assigned by respondent Ashton are hereby stricken for failure to comply with Supreme Court Rule 35.

Regardless of the above construction of the Supreme Court rules, we believe that the trial court exercised its sound judicial discretion in awarding a new trial to Margaret Sweeney and to Frank Sweeney. The question of their liability on the issue of willful and wanton misconduct was close. The verdict was large. The out of pocket damages did not exceed $7,000, including loss of time. Ashton was sixty-six years old. The testimony of the doctors indicated that an operation would heal the fracture. The affidavit of Beatrice Wensland disclosed facts that, while corroborative of other testimony, if introduced at a second trial, might establish that the defendants Sweeney were not liable.

155

The trial court had a right to consider all these factors in awarding a new trial.

From a careful examination of the entire record, we hold that the trial court. properly exercised its sound judicial discretion in granting a new trial as to the defendants Sweeney, but improperly granted a new trial as to the defendant Stevens.

For the above reasons the order of the trial court with reference to the granting of a new trial as to the defendant John Stevens is reversed and the cause remanded to the trial court with directions to render an appropriate judgment in favor of the defendant Stevens in bar of action and to proceed in due course (*Kavanaugh v. Washburn*, 387 Ill. 204). As to the respondents Margaret Sweeney and Frank Sweeney, the order granting them a new trial is affirmed.

*Order affirmed in part and reversed in part and cause remanded.*