Richard V. Randolph, Appellant, v. City of Chicago, Appellee.

Gen. No. 42,151.

86

Heard in the first division of this court for the first district at the February term, 1942. Opinion filed June 1, 1942. Rehearing denied June 16, 1942.

WOLFBERG & KROLL, of Chicago, for appellant; C. A. CAPLOW, of Chicago, of counsel.

BARNET HODES, Corporation Counsel, for appellee; JAMES A. VELDE and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action by plaintiff to recover damages on account of injuries sustained October 17, 1938, when he fell into a coal hole in the sidewalk in front of 451 East 35th street, Chicago, plaintiff obtained a verdict with damages assessed at $2,500. The City made a motion for judgment in its favor notwithstanding the verdict, which was denied. It then made a motion in writing for a new trial for 15 alleged reasons. This motion was allowed. The plaintiff by leave under section 77 of the Civil Practice Act [Jones Ill. Stats. Ann. 104.077] appeals to this court.

The court stated its reason in these crisp words: "I consider there is insufficient evidence in the record to prove either actual or constructive notice to defendant. I will therefore allow and grant the defendant's motion for a new trial."

In *Wagner v. Chicago Motor Coach Co.*, 288 Ill. App. 402, at page 405, this court stated the rule applicable in an appeal of this kind, as follows: ''The action of the trial court in granting or denying a motion for new trial based on the alleged insufficiency of the evidence to sustain the verdict is within the discretion of the court and is not subject to review except where there has been an abuse of discretion, and this fact *clearly appears*. . . . Where a new trial is *granted* on the ground of insufficiency of evidence, a stronger case is required to secure a reversal than where it has been denied; and the action of the trial court in *granting* a new trial will not be disturbed unless the evidence *palpably supports* the verdict. (See also *Tone v. Halsey, Stuart & Co., Inc.*, 286 Ill. App. 169, and *Gavin v. Keter,* 278 Ill. App. 308.)

''In the *Tone* case, where we allowed an appeal from an order granting a new trial and affirmed such order, we said (p. 171): 'No Illinois case construing this provision of the Civil Practice Act (§ 77) is cited, but many decisions of courts where similar statutes have been enacted are cited to the effect that only where the trial court has abused its discretion or proceeded upon some clear or manifest misapprehension of a supposed controlling rule of law, will an order for a new trial be reversed. Even in such cases, decisions indicate courts are reluctant to reverse, and their power to do so is seldom exercised.' Citing cases from Kansas, California, Iowa, Oklahoma, Florida, Pennsylvania and Washington.''

The only evidence introduced by the City at the trial was a photograph of the place where the accident occurred.

For the plaintiff, Harold Adams testified that he knew of the condition of the hole before the accident happened; that when folks would step on the cover of the hole it would rattle; it was loose. He looked at it after the accident and found a chip was broken off the cover, a piece off the edge. There was a chip

off the ledge and a chip off the cover. Every time anybody would step on the thing it would start to rattle. He said he went over the sidewalk ''a lot of times'' before the accident. He had stepped on it and heard it rattle.

John Hill testified that he looked at the hole after the accident, and that the concrete around it was in bad condition and it had a hole in the lid. The hole looked like a piece was cracked off. He looked inside the hole; the concrete was loose in the hole and the lid was broken off. He also said he had observed the condition of the manhole before the accident; had once before walked over it. He lived in the neighborhood all his life. He visited the paper stand on the corner every day. He went by or walked over the hole about seven or eight months before the accident happened. The concrete needed to be fixed, and the lid needed a new one on top of the hole. On cross-examination he said that he saw the need of a new lid seven or eight months before the accident. He could also see it needed new concrete. He could see it from the paper stand. Anybody walking along there could see it needed a new lid, as he noticed it.

John B. Henry operated a newspaper stand about 15 feet from the hole. He testified that he had been there about three years; that he saw the hole before the accident; that there was a lamp post near there; he would sit there and automatically and unconsciously put his foot in the lid and it would rock; that was during the summer before the accident. When people walked on the sidewalk and on the hole the lid would give a rattling sound, a rattling noise. As often as anybody walked across it it would rattle. This witness also said that he reported this to the Stanton avenue police station, which was directly across the street from his paper stand. In particular he remembered that he told Policeman John Rose that something should be done because the lid on the top of the

hole was so loose somebody might fall through it. He says Rose said he was going to report it. He spoke also to other officers in the police station. They would come over to buy papers, and he would call their attention to it. He saw the hole after plaintiff had departed after the accident. He saw a few inches broken off of the surface of the top of the hole—the lid of it. There were a few inches broken from the side. He guessed about three inches around the side, a circle like or half circle. The inside groove that holds the cover on was broken at several places. The lid was rusted and had been for some time.

This positive evidence is uncontradicted. Policeman John Rose was not called by the City as a witness, nor is his absence accounted for. The statement of the trial judge to the effect the evidence was insufficient to show either actual or constructive notice indicates to this court that he must have been of the opinion, as a matter of law, that notice to the police is not notice to the City. As authority for this view the City in its additional brief cites *Reid v. City of Chicago*, 83 Ill. App. 554, 556. The opinion in that case was by Justice SHEPARD, filed July 11, 1899. The opinion does not mention the case of *Lundon v. City of Chicago*, 83 Ill. App. 208, filed at the same term on June 9, 1899, delivered by Presiding Justice FREEMAN of the same court. In that case the plaintiff in an action of this character sued the City, and the trial court instructed the jury that in order to find the defendant guilty of negligence the jury must believe from a preponderance of the evidence that the City had direct notice of the dangerous conditions "given to its officer having charge or oversight of the place in question," or that the unsafe condition had lasted long enough so that in the exercise of reasonable care the City should have known. There was a verdict for defendant with judgment. With reference to this instruction the opinion states: "The record does not

show that the city has any such officer, nor indicate where he could be found. The city has no right to claim exemption upon the ground that some particular officer has not been notified of the dangerous condition of a sidewalk. It is the duty of the city's representatives—as, for example, its police or other employes —to notify the proper officer, whose duty it is to repair such places and keep them in order, and meanwhile to take proper precautions to warn people of the danger and prevent accident; and notice to such officers is notice to the city.''

The judgment was reversed and the cause remanded for another trial.

In the later case of *Mareck v. City of Chicago*, 89 Ill. App. 358, the case was against the City for permitting the accumulation of ice in ridges and holes on the streets so as to render passage over the same dangerous. There was a verdict of not guilty with judgment. The opinion was by Presiding Justice SEARS. In two instructions the jury had been told in substance that in order to find the City guilty it must believe not only that the obstruction existed at the time and place of the accident but also that the City either had direct notice of the obstruction given to one of its officers having charge or oversight of the place in question, or that the place had been so obstructed for a time sufficiently long for the City of Chicago, in the exercise of reasonable care, to have discovered it and removed it before the accident. The opinion states that the substance of the instruction had been considered in *Lundon v. City of Chicago*, 83 Ill. App. 208, where it had been held that any limitation of direct notice as stated in the instruction was erroneous. The opinion then quotes with approval the statement already recited from the opinion in the *Lundon* case and states that for the error in giving these instructions the judgment is reversed and the cause remanded.

We have examined *City of Joliet v. Looney,* 159 Ill. 471 (affirming the same case in 56 Ill. App. 502) but do not find the law as there stated inconsistent with *Lundon v. City of Chicago.*

We are reluctant to reverse an order by a trial judge granting a new trial. Ordinarily this is entirely within his discretion. However, upon the whole record here, we think it apparent the trial judge must have misapprehended the rule of law applicable in this jurisdiction as to the materiality of notice given, under circumstances such as here appear, to a police officer of the City. There is no conflict in the evidence, and in our opinion it was sufficient to show both constructive and actual notice. The law being as stated, we hold it was an abuse of discretion to allow defendant's motion for a new trial. For this reason the order will be reversed and the cause remanded with directions to overrule the motion of defendant for a new trial. *Scott v. Freeport Motor Casualty Co.,* 379 Ill. 155.

*Reversed and remanded with directions.*

O'Connor, J., concurs.

McSurely, P. J., dissents.