4 Ill.2d 125 (1954)
122 N.E.2d 262
RUTH PITROWSKI, Admx., Appellant,
v.
THE NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, Appellee.
No. 33177.
Supreme Court of Illinois.
Opinion filed September 23, 1954.
Rehearing denied November 15, 1954.
MARION J. HANNIGAN, and EDWARD G. BICEK, (EDWARD WOLFE, of counsel,) all of Chicago, for appellant.
WINSTON, STRAWN, BLACK & TOWNER, of Chicago, (GEORGE B. CHRISTENSEN, DOUGLAS C. MOIR, and EDWARD J. WENDROW, of counsel,) for appellee.
Reversed and remanded.
Mr. JUSTICE KLINGBIEL delivered the opinion of the court:
This action was brought in the circuit court of Cook County by Ruth Pitrowski, plaintiff-appellant, under the provisions of the Federal Employer's Liability Act (45 *126 U.S.C.A. sec. 51 et seq.) against the New York, Chicago & St. Louis Railroad Company, to recover damages for the death of her husband.
At the trial, defendant introduced no evidence, but elected to stand upon its motion for directed verdict at the close of plaintiff's evidence. Defendant's motion having been denied, the cause was submitted to the jury, which returned a verdict in favor of plaintiff, and judgment was entered thereon in the amount of $100,000. On appeal, the Appellate Court for the First District reversed without remanding, holding that plaintiff had failed to prove any negligence on the part of defendant and, therefore, the trial court erred in refusing to direct a verdict for the defendant. Plaintiff's petition for leave to appeal having been allowed, the cause is now before this court for consideration.
On this state of the record, it is the duty of this court to examine the record to determine whether there is any evidence which, taken with its intendments most favorable to the plaintiff, tends to support the charge of the complaint. (Mueller v. Elm Park Hotel Co. 398 Ill. 60, 63.) Section 51 of the Federal Employer's Liability Act provides that a railroad carrier engaged in interstate commerce shall be liable in damages for any injury or death of an employee "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." The act also abolishes the defenses of contributory negligence and assumption of risk. Thus, the only question which we are now called upon to answer is whether there is any evidence in the record, viewed in the light most favorable to the plaintiff, to support the jury's conclusion that defendant was guilty of negligence which contributed to decedent's death, or if there is any evidence from which such negligence could reasonably be inferred. Lavender v. Kurn, 327 U.S. 645; Bonnier v. Chicago, Burlington and Quincy Railroad Co. 2 Ill.2d 606.
*127 The record discloses that decedent met his death at about 3:30 A.M. on October 15, 1951, while engaged in a switching operation for defendant on the industry tracks of the Bell Fibre Products Company plant in Chicago. The accident took place on the spur track which extends in a northerly direction from defendant's tracks into the Bell Fibre plant. At the time of the accident it was a dark morning and there were no lights whatever about the industry track. The switching operation consisted of two box cars which were being pushed by a Diesel locomotive in a northerly direction. Prior to the occurrence in question the engine and cars with a caboose attached had come north on defendant's main line. The caboose was left on the main line with the head brakeman protecting it. The switching movement then entered the Bell Fibre plant, and the yard conductor, Fietze, walked down the track ahead of the cars to the "entrance switch" where the track divides into a north track and an east track. When the switching movement passed Fietze onto the north track it was moving at three or four miles per hour, and decedent was riding on the east side of the lead car "in the place and manner that is customarily done." As the two cars and engine proceeded north they moved through a thirty-foot "tunnel" made by the sides and overhang of the adjoining building. The accident occurred about fifteen feet north of the north end of the tunnel. At that time Fietze was standing east of the engine, about eighty feet from the front end of the lead car, so that he could pass signals with his lantern to the engineer to stop or proceed when he got a signal from the decedent. Fietze testified, "I did not see what happened. What attracted my attention to the happening of something is that I seen a shadow, a shadow was going against the wall. * * * There are no lights of any kind lighted at or about the sidetrack or that tunnel and when I saw the shadow appear to be going *128 towards the wall I heard nothing. I yelled at the engineer to stop. When I yelled he stopped promptly. I can't say how far the engine went from the time I yelled until it did come to a stop. I don't recall. It went about 3 feet, 4 feet, something like that."
It is undisputed that the derailment was caused by a "dolly" which was used by the Bell Fibre Company to convey material about its plant on the railway tracks. This dolly was seven or eight feet in length and was constructed of metal angle irons. It extended ten or twelve inches above the track level and had no lights or any warning devices on it. One of defendant's rules provides: "Track foremen report to and receive instructions from the road master. They will be held responsible for the proper and economical maintenance of the track roadway and right of way on their sections and the use of labor and material furnished them. They must make frequent inspections of the section assigned to them, and know that it is in safe and proper condition." Defendant's section foreman, whose duty it was, under the above rule, to inspect and maintain the industry tracks, testified that he had seen this dolly in use on or about the industry tracks for two or three years prior to the accident, that he had never notified the industry not to use it; that he knew it had no lights or warning devices; that he never notified his superior officer that it was being use; and that he never told decedent that it was being used.
Under its agreement with the industry the defendant was required to maintain the industry tracks. The section foreman testified that he made weekly inspections of the tracks by walking over the track in the daytime, looking for objects that would foul the track. No inspection of the track was made prior to the switching operation on the night of the accident. There was no evidence as to when the dolly was placed on the track or how long it remained there prior to the accident.
*129 Plaintiff's complaint charged defendant with the following four acts of negligence: (1) Defendant caused or allowed said car to become derailed; (2) defendant moved said car at a dangerous and excessive rate of speed; (3) defendant caused or allowed obstructions to be on the track; (4) defendant failed to furnish plaintiff's intestate with a reasonably safe place to work.
After a careful examination of the evidence, we are of the opinion that the record contains sufficient evidence to establish a reasonable basis from which the jury could conclude that defendant was guilty of the negligence charged and that such negligence contributed in whole or in part to decedent's death. Numerous rulings of the Federal courts have made it clear that to the maximum extent proper, questions in actions arising under the Federal Employer's Liability Act should be left to the jury. (Tiller v. Atlantic Coast Line Railroad Co. 318 U.S. 54, 68; Bailey v. Central Vermont Railway, 319 U.S. 350; Tennant v. Peoria and Pekin Union Railway Co. 321 U.S. 29.) In recent Illinois cases we have pointed out that "the right to trial by jury is a part and parcel of the remedy afforded railroad workers under the Federal Employers' Liability Act. [Citation.] To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a good portion of the relief which Congress has afforded them." (Williams v. New York Central Railroad Co. 402 Ill. 494, 507. Even more recently, in Bonnier v. Chicago, Burlington and Quincy Railroad Co. 2 Ill.2d 606, we again reiterated that only where there is a complete absence of probative facts tending to show negligence should the court take the question from the jury and decide the issue of negligence as a matter of law.
In its opinion the Appellate Court stated that "it would be a burden not compatible with the practical operation of the railroad to require that each switching movement be preceded by a track walker. The most that could be required *130 in the exercise of ordinary care, taking into consideration practical operation of the railroad, is that an inspection be made at reasonable times and places, the frequency depending upon varying circumstances." The question of reasonablness was one for the jury and the reviewing court should not have substituted its judgment as to what was reasonable care for the conclusion of the jury on that issue. Likewise, the question of whether defendant was negligent in not taking additional measures to furnish its employees with a safe place to work was a question of fact for the jury. The Appellate Court had no right to hold, as a matter of law, that defendant was under no duty to inspect before this switching operation was commenced. The jury was properly entitled to find, as it apparently did, that it was negligent for defendant to conduct the switching operation in question in an unlighted yard without first inspecting to ascertain whether the track was clear of dangerous obstacles. In Williams v. Atlantic Coast Line Railroad Co. (5th Cir.) 190 Fed.2d 744, the court said: "The employer must make proper tests and inspections to discover dangers in the place where the employees must work, and after ascertaining their existence must take reasonable precautions for the safety of the employees." Whether defendant made proper tests and inspections in the instant case was a proper question for submission to the jury and thus it was error for the Appellate Court to reverse the verdict and judgment in favor of plaintiff.
For the foregoing reasons the judgment of the Appellate Court is hereby reversed, and the cause is remanded to that court to consider the other assignments of error which it stated were not considered upon the initial review of the case.
Reversed and remanded.