William J. Glime, Appellee, v. The New York Central
Railroad Company, Appellant.

Gen. No. 46,446.

First District, Second Division.
April 6, 1955.
Released for publication May 23, 1955.

Marvin A. Jersild, Charles F. White, and L. Thomas Houser, all of Chicago, for appellant.

Henslee, Monek & Murray, of Chicago, for appellee; Melvin L. Griffith, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is a suit under the Federal Employers' Liability Act. Defendant appeals from a judgment on a verdict for $50,000. Plaintiff was employed as a brakeman and about 2:00 a. m. on December 28, 1949, he was proceeding in the course of his work from the south to the north side of a track in defendant's yard at Toledo, Ohio. His passage was obstructed by a train consist-

ing of an engine and 23 or 24 freight cars. Plaintiff climbed between two of the cars and was about to get off on the other side when the cars moved, he was thrown to the ground, and the wheels of the cars passed over and cut off his left arm. As no point is made on the amount of the damages, there is no occasion to discuss the injuries further.

Plaintiff charges that defendant failed to provide a safe place to work and failed to warn plaintiff that it was about to move the train, in violation of its rule requiring that an engine bell must be rung when an engine is about to move. The case went to the jury on both charges, and following the verdict all the usual post-trial motions were made and were overruled. Defendant makes three points in its brief—that there was no proof of any negligence on the part of defendant; that it was error to instruct the jury on the duty of defendant to provide a safe place to work; and that plaintiff was injured solely as a proximate result of his own negligence. Defendant does not seek a new trial on the ground that the verdict is against the manifest weight of the evidence, but prays that the judgment be reversed because there is not sufficient evidence in the record to support the submission of the case to the jury.

Plaintiff was 30 years old at the time of the accident. He had been employed as a brakeman by defendant since 1940. He had been promoted to conductor in 1944, but at the time of the accident, he was a member of a crew of two brakemen and a conductor working out of the Airline Junction Yard at Toledo, Ohio. He had been called for work by the register clerk at 12:30 a. m. and reported to the trainmaster and general yardmaster's office at 1:45 a. m., then walked to his caboose which was located on the East Caboose Storage track. For the purpose of understanding plaintiff's movements, it is necessary to describe the locale in which the accident occurred.

511

The Airline Junction Yard is a busy and important yard for the make-up of trains, storage of cabooses, and other services in the Toledo area. It runs east and west a distance of approximately two miles and is about ⅔rds of a mile wide. At the place in question there are two lead tracks called the South Lead and the North Lead. Just north of the North Lead track there is a trainmaster's and general yardmaster's office in one building. This building houses the trainmaster, general yardmaster, an assistant general yardmaster, who had supervision over eight division yardmasters, the crew dispatcher, and others. A bill office building located a few feet east of the trainmaster's building houses the mess hall, toilets, bill office, car inspector's desk, car foreman's desk, and locker room. South of the South Lead track and about opposite the trainmaster's office, there is a yardmaster's shanty and locker room. The shanty serves as the division yardmaster's office. It also appears from the record that various supplies are kept there. The lead tracks as they run east and west sprout into groups of tracks for caboose storage, and so on. On the west, three tracks run off the lead tracks and on the east, nine tracks. The two southernmost tracks on the west are caboose storage tracks. Plaintiff's caboose was on the extreme south track.

 After leaving the trainmaster's office where he had registered, plaintiff went to his caboose to perform certain tasks, then to the yardmaster's shanty, where he got materials needed for his trip and brought them back to the caboose. He was then required to go to the bill office on the other side of the tracks. He started off carrying a lantern when he saw that his way was blocked by a train of 23 or 24 cars. He waited two or three minutes. He testified that at other times he had waited as long as 18 minutes for the track to clear. There is testimony that this track was blocked as long as an hour and a half at a time. He looked both east

512

and west, saw no light, no switchmen or engines, and heard no bell or other signal. He climbed between the cars and just as he was about to get off, the cars were moved and the accident happened. He walked to the register clerk, reported the accident, and in due course was taken to a hospital where he was cared for. In the foregoing statement, we have accepted plaintiff's version of the controverted facts, as under the law we are required to do in this case. Pitrowski v. New York C. & St. L. R. Co., 4 Ill.2d 125, 126; Janjanin v. Indiana Harbor Belt R. Co., 343 Ill. App. 491; Bales v. Pennsylvania R. Co., 347 Ill. App. 466.

■ It is argued by defendant that compliance with the rule requiring an engineer to ring a bell before moving a train is not practicable in switching operations and that to do so would create confusion in yard operations. There may be some merit in this argument, but it must be balanced against the duty which defendant owed to employees working in hazardous surroundings under conditions which had made it common practice for men to cross from one side of the tracks to the other at grade and to climb between cars obstructing passage. This practice was known to defendant's supervising agents. An issue was thereby created as to whether under the circumstances the defendant was guilty of negligence in failing to ring a bell or otherwise warn plaintiff of the movement of the cars. Recent decisions have made it clear that this was an issue for the jury.

■ In Bonnier v. Chicago B. & Q. R. Co., 2 Ill.2d 606, plaintiff, a railroad blacksmith, climbed up on a car to get a piece of scrap metal for work in his shop and while so doing was injured as a result of a movement of cars. Plaintiff in that case had less reason to be on the car than plaintiff had in the instant case. The court held that the starting of the locomotive without ringing a bell or giving warning in any other way, in violation of the company rule, was negligence.

513

The court quoted with approval the following language from Louisville & N. R. Co. v. Botts, 173 F.2d 164, at pp. 166–7:

"In this connection, heed necessarily must be given to the unmistakable teaching of the Supreme Court in its recent decisions, that trial and appellate courts, both federal and state, on questions of liability under the Federal Employers' Liability Act, have been taking too narrow a view generally of the scope of permissive inference which is open to a jury on 'probative facts.' As one of the Justices has expressed it, in indicating the purpose of that Court's repeated overturning of decisions in such cases during the past few years (approximately 20 since 1943), 'The historic role of the jury in performing that function . . . is being restored in this important class of cases.' See concurring opinion of Mr. Justice Douglas in Wilkerson v. McCarthy, 69 S. Ct. 413, 422."

The Bonnier case is likewise conclusive on the question of whether or not plaintiff's act in climbing between the cars defeats his right to recover. The court held that if negligence, it was contributory negligence which under the Federal Employers' Liability Act is to be considered by the jury only in assessing damages. The question of damages is not before us.

It is urged that the trial court erred in giving an instruction on defendant's duty to provide a safe place to work. The instruction is as follows:

"It was the duty of the defendant, The New York Central Railroad Company, to use ordinary care to provide the plaintiff with a reasonably safe place in which to do his work and with a reasonably safe method of doing the work in which he was engaged at the time and place of the accident."

Defendant's theory is that to support such an instruction the plaintiff must show a physical defect which rendered the premises unsafe. There were no particu-

514

lar physical defects in the tracks, instrumentalities or appliances. Plaintiff denies that it was necessary to show such a defect, but asserts that this was an unsafe place to work because of the general character of the facilities established by defendant which we have described—that is, various tracks merging into lead tracks at a point where buildings on both sides of the tracks necessitated constant passage from one side to the other; the habitual obstruction of the tracks by trains, requiring trainmen either to take a circuitous route or to climb between cars (a practice known to their supervising officials); failure to provide a safe and convenient method to get from one side of the tracks to the other; and failure to enforce rules and to take safety measures to make the passage as safe as practicable. Recent decisions support the plaintiff's position.

In Wilkerson v. McCarthy, 336 U. S. 53, 69 S. Ct. 413, a railroad switchman was injured as a result of falling into a pit which had been constructed for the use of car repairmen. Across the pit a board had been placed which had become greasy and slippery by reason of its use by the men. When the pit was not in use, it was blocked off by safety chains strung between posts. Plaintiff knew the chains were there to keep him from crossing over the pit and to require him to go a short distance around it. However, he disregarded the chains, went around a car and stepped on a greasy board from which he slipped into the pit. The greasy character of the board could hardly be said to have been a defect. It was the natural result of the use of the board by men whose clothes and hands were greasy. Nevertheless, the court held that the case was one for the jury on the question of the negligent failure of the railroad to provide a safe place to work. That decision reversed the Supreme Court of Utah. Two separate concurring opinions and two dissenting opinions reveal how sharp the division was on this question of

negligence. The opinion of Mr. Justice Douglas went farthest in curtailment of the powers of trial and reviewing courts with respect to the submission of such issues to a jury. Our Supreme Court in the Bonnier case, supra, quoted with approval from Louisville & N. R. Co. v. Botts, supra, which had adopted the language of Mr. Justice Douglas in the Wilkerson case.

In Pitrowski v. New York C. & St. L. R. Co., 4 Ill.2d 125, an employee met his death while engaged in switching operations on a private industrial track. The movement of the cars was in a 30-foot "tunnel" made by the sides and overhang of an adjoining building, and the accident was caused by a "dolly" negligently left on the track by an employee of the industry. It cannot be said that there was an actual defect in the physical apparatus the employee was required to use or on or about which he was required to work. One of the grounds of negligence charged was that the defendant failed to furnish the plaintiff's intestate with a reasonably safe place to work. The court held that there was sufficient evidence for the case to go to the jury upon the charges of negligence there made, which included that of an unsafe place in which to work.

In Hall v. Chicago & N. W. Ry. Co., 5 Ill.2d 135, a platform which had been in existence for 35 years was held to have created a dangerous place in which to work. A brakeman was caught between the platform and a freight car, the clearance not being adequate. The court held that while a close clearance, with accompanying danger, was not in itself sufficient to warrant a finding of negligence, still when coupled with an element of "deception," it was sufficient to support a charge of failing to provide a reasonably safe place in which to work. We consider the Hall case to be an authority against the need of showing a physical defect.

■ ■ It is our conclusion that it is not necessary to show a defect in physical equipment in order to support a charge of failure to provide a safe place in which

516

to work. The general conditions described were sufficient to present an issue on that charge to the jury and the instruction was properly given.

█ The last point made by defendant is that plaintiff's injury was solely and proximately caused by his own negligence. This would be in point only if we were to hold that defendant was not negligent in its operation of the train. The movement of the train was a more immediate cause of the injury than was plaintiff's climbing between cars. If we assume that plaintiff's climbing between the cars was negligence, then it was contributory negligence, still leaving an issue for the jury in Federal Employers' Liability Act cases. Bonnier v. Chicago B. & Q. R. Co., 2 Ill.2d 606.

Judgment affirmed.

McCORMICK, P. J. and ROBSON, J., concur.