Margaret Nell Stobbs, Executor of Last Will and
Testament of Clarence Elvin Nell, Deceased,
Plaintiff-Appellee, v. Ray Cumby, Clarence C.
Hatcher and Thomas S. Smith & Sons, Inc.,
Defendants-Appellants.

Gen. No. 10,012.

Third District.

February 23, 1956.

Released for publication March 12, 1956.

Rinaker, Smith & Hebron, of Carlinville, and Julian Hutchens, of White Hall, for defendants-appellants.

W. O. Harp, of Roodhouse, and L. A. Mehrhoff, of Carrollton, for plaintiff-appellee.

JUDGE REYNOLDS delivered the opinion of the court.

This case comes to this court on a petition for leave to appeal from the order granting a new trial in the Circuit Court of Greene County, Illinois. The jury found the defendants "Not Guilty" and the trial court granted a new trial solely on the ground that the verdict was against the manifest weight of the evidence, stating that there were no other errors in the trial of the case.

The suit was brought by the daughter, Margaret Nell Stobbs, as Executor of the Estate of Clarence

Elvin Nell, deceased, against Ray Cumby, Clarence C. Hatcher and Thomas S. Smith & Sons, Inc. Clarence Elvin Nell was killed in a collision between a railroad motorcar in which Nell was riding, and an automobile driven by Ray Cumby, at the intersection of the Gulf, Mobile & Ohio Railroad with Illinois State Route No. 106, a short distance west of Roodhouse, Illinois. The deceased was riding in a work car or motorcar of the railroad proceeding westwardly, in the course of his employment as a pipe fitter for the railroad. The motorcar was being operated by Raymond Monroe, another employee of the railroad, and at the time of the collision, under the direction and supervision of the deceased. The automobile was being driven by Ray Cumby, an employee of Thomas S. Smith & Sons, Inc., operating under the name of "Smith Orchard" at Roodhouse, Illinois. Cumby was on his way to town to get some repairs for a pump for the orchard company. He was under the supervision of Clarence Hatcher, the orchard boss, but was not at the time of the accident, performing any personal duty for Mr. Hatcher, but was on company business. The automobile which was a Buick, was the property of Clarence Hatcher. The railroad track runs east and west, and the state highway which is concrete slab 22 feet in width runs north and south.

The surrounding land is fairly level. The highway is straight for about one-half mile north of the intersection and one-half mile south of the intersection, so that visibility is good in either direction for one-half mile. The highway is nearly level, with a slight rise as it crosses the railroad track. The railroad is straight and level, with a little cut of about one and one-half feet some distance back from the highway. There are no buildings or trees near the intersection that would obstruct either the view of those riding a motorcar on the railroad, or those in vehicles on the highway. The

140

weather on the day in question was clear, there was no ice on the highway and the sun was shining brightly. The accident occurred about 7:45 a. m.

The deceased, and Raymond Monroe were riding in the railroad motorcar which was a vehicle about five feet long and five feet wide. It was a gasoline driven motorcar propelled by a belt arrangement that worked with a clutch. There was no gear driving arrangement, but the driver or operator of the motorcar would slip the belt until the vehicle was under way. This was necessary to put the motorcar into motion, and to cross the highway would take about ten or fifteen seconds or longer. The railroad motorcar had an aluminum colored top, and the body was painted orange. There was an isinglas or plastic windshield, and canvas covered windows at the sides. The canvas covering on the drivers side, or south side was pulled back. On the side of the car occupied by Nell, the canvas was in place and when the motorcar pulled up to the intersection, the car was stopped, Mr. Monroe looked to the south and saw no one, and Mr. Nell opened the canvas and looked to the north. Mr. Monroe also looked to the north and saw no one coming. Mr. Nell then gave Monroe the "high-sign" to proceed. Monroe then proceeded to put the motorcar in motion across the highway. He did not see anything until the collision, and after the collision found himself in the motorcar some distance down the road to the south, with Mr. Nell lying on the pavement. Mr. Cumby came and helped him out of the car. There was a flasher signal at this crossing, but it was testified that a motorcar such as the deceased and Monroe were operating would not operate the flasher signals.

Ray Cumby testified he was driving as he approached the intersection at a speed of approximately 35 to 40 miles per hour. He did not see the railroad motorcar until the collision.

141

There was some testimony that there were weeds growing in the field at the north east quarter of the intersection, and the height of these weeds was estimated as the height of the fence, or approximately two and one-half to three feet. The exhibits in the case do not show the weeds to be much obstruction to the view of anyone on the highway or the railroad.

In addition to the verdict of the jury that the defendants were "Not Guilty," the jury answered three special interrogatories in the negative. The jury found that neither Clarence Elvin Nell, the deceased, Raymond R. Monroe, and Ray Cumby were guilty of any negligent act.

The sole question presented here is whether or not the trial court should have granted the motion for a new trial. The trial court in granting the motion stated that the reason the court allowed the motion for a new trial was that the court felt that the verdict was against the manifest weight of the evidence; that the court felt that no error in the instructions or otherwise was committed in the trial of the cause.

It must be conceded that the trial court has broad discretionary power to grant a new trial, and his action will not be reversed on appeal except in case of clear abuse of such discretion. Yet at the same time, under the authority of Section 77 of the Practice Act [Ill. Rev. Stats. 1955, ch. 110, § 77], the reviewing court cannot disregard questions that fairly challenge the action of the trial court, and is not warranted in disregarding them by simply reiterating the principle that a reviewing court should not interfere with the discretion of a trial judge. As was said in Wettaw v. Retail Hardware Mut. Fire Ins. Co., 285 Ill. App. 394, "That the Act (Section 77 of the Civil Practice Act) is designed to promote justice, and to prevent a verdict, warranted by the record and justified by the evidence, from being set aside and lost to the party who was

fairly entitled thereto, and such litigant forced to undergo the hazards of another trial with its further incidents of delay and expense, does not admit of argument. We think it clear that where a party litigant feels aggrieved at the order of a trial court in setting aside a verdict in his favor, and presents to a reviewing court, upon a petition for leave to appeal from such order, grounds which are reasonably debatable and fairly challenge the propriety of the grant of the new trial, the reviewing court should permit the appeal to be taken."

And the court in that case continuing, said: "If the rule were otherwise, then when a new trial was awarded solely upon the ground that the verdict was contrary to the manifest weight of the evidence, section 77 would be meaningless and of no avail to the complaining party. . . . We think the section contemplates that where such ground is presented, the reviewing court should ascertain whether the record raises a fair question as to the propriety of the court's ruling, though it be on matters of fact, and if it does, then grant leave to appeal from the order awarding the new trial." This interpretation of Section 77 was reiterated in the case of Hall v. Chicago & N. W. Ry. Co., 349 Ill. App. 175.

■ Here most of the facts are undisputed. Yet the interpretation of these facts into a verdict is essentially one for the jury. The trial court has no right to substitute its judgment on the facts for that of the jury, or simply because he disagrees with the verdict.

There are numerous cases that hold that the order of the trial judge granting a new trial was erroneous. As has been said, reviewing courts are reluctant to reverse an order of a trial judge granting a new trial. But where the reviewing courts, upon the whole record have felt that there was an abuse of discretion on the part of the trial judge, these courts have not

hesitated to reverse the order. Scott v. Freeport Motor Casualty Co., 379 Ill. 155; Randolph v. City of Chicago, 315 Ill. App. 85; Goodrich v. Sprague, Receiver, 314 Ill. App. 671; Necheles v. Jefferson Ice Co., 336 Ill. App. 153; Franks v. Childs, 345 Ill. App. 83; Ashton v. Sweeney, 350 Ill. App. 135. In the case of Franks v. Childs, 345 Ill. App. 83, the reviewing court said this: "The jury by their verdict and by the special interrogatories, found that the plaintiff was not guilty of contributory negligence. We cannot say that their findings are so unreasonable, arbitrary, and not based on the evidence, that it would justify the trial court in granting the defendant a new trial. The finding of the jury is binding on this court under the facts and the law as disclosed by this record, and should not be disturbed. The plaintiff is entitled to have the benefit of his verdict."

■ In this case, the jury has determined the question of negligence, and by its decision found the defendants "not guilty." Here was an open highway, and the deceased, or his agent, Monroe, pulled the short railroad motorcar out into the path of the automobile. The jury could very well have found that the deceased or his agent, or both were guilty of contributory negligence. They could and did determine that the defendant Ray Cumby was not guilty of negligence, in not seeing the motorcar in time to stop and avoid the collision. We do not believe the trial judge had the right to interpose his judgment for that of the jury on the question of facts presented in this case. The order granting a new trial should not have been made. For that reason, the order of the trial court granting a new trial is reversed and remanded with instructions to set aside the order granting a new trial and to enter judgment on the verdict in favor of the defendants and against the plaintiff for costs.

Reversed and remanded with instructions.