**Charles M. Stilfield, Plaintiff-Appellant, v. Iowa-Illinois Gas and Electric Company, an Illinois Corporation, Defendant-Appellee.**

**Gen. No. 11,276.**

Second District, Second Division.

May 2, 1960.

Rehearing denied June 6, 1960.

479

Herbert M. Spector, of Rock Island, for plaintiff-appellant.

Graham, Califf, Harper, and Benson, of Moline (Robert G. Graham, of counsel) for defendant-appellee.

PRESIDING JUSTICE SOLFISBURG delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by the plaintiff, Charles M. Stilfield, as a result of the alleged negligence of the defendant corporation in transmitting electric current. The case was tried before a jury in the Circuit Court of Rock Island County, Illinois, and a verdict was returned for the plaintiff in the sum of $17,830. The defendant filed a post-trial motion asking the trial court to enter a judgment n.o.v. in its favor and alternatively asking for a new trial. The trial judge entered a judgment n.o.v. in favor of the defendant, accompanying his ruling with a short opinion wherein he found that the plaintiff was guilty of contributory negligence as a matter of law. Thereafter, the trial judge ruled conditionally upon the alternative motion for a new trial, pursuant to Paragraph 68.1 (6) of the Civil Practice Act (Ill. Rev. Stats, Chapter 110, Section 68.1 (6)), and likewise granted the motion for a new trial. This ruling was also accompanied by a short opinion in which the trial judge stated that, since the ruling on the motion for judgment n.o.v. was based on a finding by the court that the plaintiff was guilty of contributory negligence as a matter of law, therefore, the jury's verdict must have been contrary to the manifest weight of the evidence and on this ground the motion for a new trial must be allowed. The trial judge noted in this second opinion that he found no merit to the other grounds filed in support of the defendant's alternative motion for a new trial. It is from these two rulings on the defendant's post-trial motion that plaintiff appeals.

■■ The first question presented by this appeal concerns the propriety of the trial court granting to defendant judgment notwithstanding the verdict. The

applicable principles in passing upon a motion for judgment n.o.v. have been stated innumerable times. This motion presents only a question of law as to whether, when all the evidence is considered, together with all reasonable inferences from it, in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. If there is any evidence tending to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action, it is immaterial upon which side the evidence is introduced. No contradictory evidence or other evidence of any kind or character will in such case justify a judgment n.o.v., except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense, Lindroth v. Walgreen Company, 407 Ill. 121, 130; Merlo v. Public Service Company of Northern Illinois, 381 Ill. 300, 311; Marquardt v. Cernocky, 18 Ill.App.2d 135, 138; King v. Mid-State Freight Lines, 6 Ill.App.2d 159, 162. This requires consideration of the evidence but precludes any examination of the weight or credibility of the evidence in order to determine its preponderance. It is wholly immaterial on which side the weight of the evidence preponderates, Nelson v. Stutz Chicago Factory Branch, Inc. 341 Ill. 387.

Accordingly, we turn our consideration to an analysis of the evidence in all its aspects most favorable to the plaintiff. Plaintiff was an employee of Blackhawk Aggregates, Inc. (hereinafter referred to as "BAI"), which was in the business of mining sand, gravel, and similar construction materials. Since 1947 BAI had mined sand and gravel on a 120 acre tract located about two miles west of the Village of Milan, Rock Island County, Illinois, adjacent to Highway 92.

A subdivision for future homes was planned for the same site. In May, 1955, at the request of BAI, the defendant corporation, which had supplied the electrical power needs of BAI since 1947, installed a power line to supply electricity to a nearby farm house and also to supply the future electrical needs of the contemplated subdivision. This power line was a tap line running south from the main power line which extended along Route 92, the tap line following a county side road which also intersected Route 92. This tap line extended between the side road and the land of BAI over the county road right-of-way. The corner or intersection formed by the roads and the power lines was the site of the accident involved in this suit. At the time the tap line was installed, BAI was mining sand and gravel 300 to 400 feet east of the lines. The engineer, who supervised and aided in the installation of the tap line, saw and knew of the nearby mining operations and saw and knew that a crane was used some 300 to 400 feet to the east of the lines. The tap wire consisted of a bare, uninsulated, stranded copper wire with porcelain insulators spotted on a pin, carrying 13,200 volts. No warning signs of high voltage were posted. The wire involved was strung 32 to 34 feet above the ground.

On September 29, 1955, the date of the accident, BAI employed about 8 or 9 men who, in the course of their work, used cranes and other pieces of heavy equipment including the crane involved in the accident. The day before the accident the plaintiff had been directed to move several large pieces of equipment from other parts of his employer's land and deposit them in this corner area to the south of Highway 92 and to the east of the county road. The equipment, which was to be stored in the corner preparatory to sale, was loaded on trucks and moved to the

corner location, then lifted off the trucks with a crane and dropped to the ground where it was to remain until sold. On the morning of September 29, 1955, the plaintiff came to work about 7:00 a. m. He and the crew, which was under his supervision, were on the location in the corner area adjacent to the roadways and the power lines. It was raining. The truck carrying the equipment to be unloaded was "spotted" as was the crane. The crane was a movable type that rotated on a center axis and could be turned from side to side. The crane's main boom, which measured 40 to 45 feet in length, could be raised and lowered, and there was attached to it a cable connected to a winch which could be wound and unwound, thereby raising and lowering the bucket or other device attached to the end of the cable. The crane, weighing approximately 25 tons, was to be used to pick up the equipment from the truck, turn on its axis and set the equipment down on the ground in the corner area. After the crane was spotted in position, the crane operator swung the crane around to check the clearance with the wire to the west of the corner, at which time there was about 8 feet of clearance. According to the testimony of the plaintiff and one Billy Johnson, the crew member who witnessed the accident, a bucket weighing about 1,500 pounds, was picked up and swung above and to the north of the truck with the plaintiff helping to guide the heavy bucket by means of a chain attached to it. As the bucket was being lowered to the ground and while there was 3 to 4 feet clearance between the boom and cable and the power line, the electricity then arced from the power line to the cable down through the chain into the body of the plaintiff who was standing on the ground, shocking and injuring the plaintiff severely. Both the plaintiff and the witness, Billy Johnson, testified that the boom and cable were 3 to 4 feet from the wire.

484

The plaintiff, who was 38 years old at the time of the occurrence, knew the location and general condition of the bare, stranded copper wire and conceded he knew it to be dangerous. There was conflicting and contradictory testimony by the crane operator on the manner in which the accident happened, as well as a contradictory written statement allegedly secured by the defendant from the witness Johnson. The testimony adduced by the defendant consisted principally of certain expert testimony that the crane or some part thereof must have contacted the wire or approached it within a fraction of an inch in order to have produced an electrical shock which would extend through the chain into the body of the plaintiff.

The Complaint of the plaintiff charged the defendant with being negligent in: a) failing to give warning by suitable signs or otherwise of high voltage, b) failing to use high poles to carry electrical wires above the known working area used by nearby workmen, c) failing to insulate its wires around areas where workmen were known to be working, and d) overloading the wires with a greater amount of electric current than they were designed to carry.

The trial court was of the opinion that the facts constituted contributory negligence on the part of the plaintiff as a matter of law for the reason that he unreasonably exposed himself to danger when he knew both the location of the wire and that electricity was dangerous. The trial judge, in arriving at his conclusion, stated that the evidence was uncontradicted that the plaintiff, as foreman in charge of the operation of the crane, told the crane operator to move the crane in closer to the wire when it was then 8 feet from the wire, and that such constituted the clearest example of intentional and unreasonable exposure by a person to an existing and known danger.

An examination of the record, however, reveals that the testimony of the plaintiff and the witness Johnson was that the crane was not moved further toward the wire at the direction of the plaintiff but that it remained at a distance of 8 feet from the wire. In addition, the testimony of the plaintiff and the witness Johnson and the reasonable inferences to be drawn therefrom could have reasonably been taken by the jury to indicate that at no time were the cable and the boom closer than 3 feet from the wire. The trial court in effect either concluded that all reasonable minds would agree that placing the cable and the boom 3 feet from the electric wire was negligence or else concluded that all reasonable minds would agree that the testimony of the plaintiff and the witness Johnson could not be believed.

■■■■ The question of contributory negligence is ordinarily one of fact for the jury to decide under proper instructions. Contributory negligence becomes a question of law only when it can be properly said that all reasonable minds would reach the conclusion, under the facts stated, that such facts did not establish due care and caution on the part of the person charged therewith, Thomas v. Buchanan, 357 Ill. 270, 277; Hulke v. International Mfg. Co., 14 Ill.App.2d 5, 44. Whenever there is any evidence in the record with any legitimate inference that may reasonably be drawn therefrom which tends to show the exercise of due care on the part of the plaintiff, the issue of contributory negligence is a jury question. The evidence appears to be uncontradicted that the plaintiff checked the clearance of the crane with the high tension wire prior to undertaking any operations on the morning in question. There is conflicting testimony in the record as to whether or not, after the crane, boom, and cable were 8 feet from the wire, the plaintiff ordered the

crane moved in closer to the electrical wire. It is true that the plaintiff was aware of the location of the electric line and the fact that it transmitted electrical current and was of its nature dangerous. However, the record plainly indicates that plaintiff had no knowledge of the voltage being carried or that the wire was uninsulated. Plaintiff appears to have had, as so many persons have, only the nebulous notion that electric wires are generally dangerous and direct contact with them is to be avoided. Furthermore, so far as the record indicates, the plaintiff took pains to keep the crane, boom, and cable at least 3 or 4 feet from the electrical wire. Under these circumstances, we cannot agree with the trial court that all reasonable minds would reach the conclusion that the facts failed to establish due care on the part of the plaintiff. Plaintiff's contributory negligence, if any, becomes a question of law only in those exceptional cases where the want of care on the plaintiff's part is so manifest and flagrant as to convince all fair and candid minds that he did not exercise the caution for his own safety that should characterize the act and conduct of the ordinarily prudent person. The plaintiff was in a place where he had a legitimate right to be. True, he was aware that contact with defendant's line should be avoided. According to his testimony he had no intention of coming in contact with the high line and did not do so. Plaintiff had no knowledge that the power line above him was carrying 13,200 volts and, admittedly, did not know that, under certain circumstances, electricity would arc when a metal object was placed within 3 or 4 feet of the wire. The control of the boom was not alone in plaintiff but in the crane operator, and the evidence in the record would justify a jury finding that the plaintiff made every reasonable effort to avoid having the chain or cable which

he was holding come in close proximity to the power line. Accordingly, it is our conclusion that the plaintiff was not guilty of contributory negligence as a matter of law.

 The second and final issue to be decided is concerned with the question whether the trial court properly granted the defendant's motion for new trial. The trial court in granting the motion for new trial stated that the reason the court allowed the motion was that the court had previously ruled that the plaintiff was guilty of contributory negligence as a matter of law and that therefore the jury's verdict must have been contrary to the manifest weight of the evidence. The trial court in its opinion stated that it felt that no error in the instructions or otherwise was committed in the trial of the cause. It is true that the trial court has a broad discretionary power to grant new trials, and the action of the trial judge will not be reversed on appeal except in the case of a clear abuse of discretion, Stobbs v. Cumby, 9 Ill.App.2d 138, 142; Ashton v. Sweeney, 350 Ill. App. 135, 148. On the other hand, the reviewing court cannot disregard questions which fairly challenge the action of the trial court and is not warranted in simply reiterating the principle that a reviewing court should not interfere with the discretion of a trial judge, Hall v. Chicago & N. W. Ry. Co. 349 Ill. App. 175; Wettaw v. Retail Hardware Mut. Fire Ins. Co. 285 Ill. App. 394. The trial judge, in passing upon the alternative motion for new trial, concluded that upon the entire record the evidence did not preponderate in favor of the plaintiff but rather in favor of the defendant due to the fact that the plaintiff was guilty of contributory negligence as a matter of law. The defendant produced no witnesses to the accident other than to call the plaintiff as an adverse witness. The defendant relies upon certain alleged discrepancies in the testi-

mony of the plaintiff and his witnesses, the improbability of plaintiff's story, and the testimony of defendant's experts that electricity will not arc for more than a fraction of an inch under the weather and other conditions existing on the day in question. As was stated in Tennant v. Peoria and Pekin Union Ry. Co., 321 U. S. 29, 88 L. Ed. 520: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which is considered most reasonable. . . . That conclusion, whether it relates to negligence, causation, or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." To the same effect are Dowler v. N. Y., C. & St. L. R. Co., 5 Ill.2d 125, and Pitrowski v. New York, C. & St. L. R. Co., 4 Ill.2d 125. When the jury found the plaintiff free from contributory negligence it was choosing between conflicting testimony, for example, as to whether the plaintiff ordered the crane moved in closer at a time when it was 8 feet from the wire, and as to whether the crane cable was 3 to 4 feet from the wire when the electricity arced. The jury had the right to believe the testimony of the plaintiff and the witness Johnson in contrast to the

489

testimony of the crane operator and the defendant's experts. Reviewing courts are reluctant to reverse the trial judge in granting a new trial, but where the appellate tribunal feels that the trial judge has invaded the constitutional prerogative of the jury and thereby committed an abuse of discretion, reviewing courts have not hesitated to reverse the order. See Stobbs v. Cumby, 9 Ill.App.2d 138, 144, and Ashton v. Sweeney, 350 Ill. App. 135, 151, and cases cited therein. Here the jury, by their verdict, found that the plaintiff was not guilty of contributory negligence under the instructions of the court. The trial judge found no error in the matter of the instructions or the admission of evidence. We cannot say that the finding of the jury on the matter of the plaintiff's due care is so unreasonable, arbitrary and unsupported on the evidence that it would justify the trial court in granting the defendant a new trial. The finding of the jury is binding on this court under the facts and the law as disclosed by this record and should not be disturbed. The plaintiff is entitled to have the benefit of his verdict.

We have carefully examined the briefs and arguments in this case and all points raised therein, and upon the whole we have concluded that defendant's motions for judgment n.o.v. and for a new trial should not have been granted. Upon the record here the questions of negligence, contributory negligence, and proximate cause were jury questions and the jury resolved them in favor of the plaintiff. An illuminating annotation on the subject matter of this suit will be found in 69 A.L.R.2d beginning at page 93. The decisions in the cases of May v. Illinois Power Co. 342 Ill. App. 370, 3rd District, and Celner v. Central Illinois Elec. & Gas Co., 343 Ill. App. 310, 2nd District, have been called to our attention, but the facts in each of these cases readily distinguish them from the factu-

al situation in the case at bar. For the foregoing reasons, the orders of the trial court granting judgment for defendant notwithstanding the verdict and granting it a new trial are reversed and remanded with directions to set aside said orders and to enter judgment on the verdict in favor of the plaintiff and against the defendant.

Reversed and remanded with directions.

CROW and WRIGHT, JJ., concur.