HARLON BEATTY, Plaintiff-Appellee, *v.* TERRY WIERUS *et al.*, Defendants-Appellants.

Second District (1st Division)   No. 74-433

Opinion filed July 27, 1976.

Judge, Hunter & Schirott, of Park Ridge, for appellants.

Robert J. Bourelle, of Wheaton, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff in this case was injured in an automobile accident. Liability on the part of the defendants was admitted. After the jury returned a verdict for $40,000 against the defendants and for the plaintiff, the court granted the plaintiff a new trial. The defendants sought leave to appeal which was granted. We conclude that, under the evidence, the court's granting of a new trial was an abuse of discretion. We therefore reverse the order granting a new trial and remand the cause to the trial court with instructions to set aside the order granting a new trial and to enter judgment on the verdict for the plaintiff and against the defendants for $40,000 and costs.

The evidence discloses that on June 4, 1971, the plaintiff Harlon Beatty was driving his pickup truck when it was struck in the rear by a bus owned by defendant Du Page Motor Coach Co., Inc., and operated by defendant Terry Wierus. The plaintiff was not immediately hospitalized as a result of the accident. However, he was unable to continue work and also complained at home as to how he was feeling. He saw Doctor Minsek on June 5, 1971. Doctor Minsek did not testify at the trial. He saw Doctor Barnett, Doctor Minsek's partner and his own family physician, on June 9, 1971. Doctor Barnett testified that at that time Mr. Beatty had stiff legs, a stiff hip and a stiff sacrum. X-rays revealed osteoarthritis and advanced degenerative disc disease at L5-S1 at this time. Neither of these could have been caused by the accident.

At that time Dr. Barnett put Mr. Beatty on a cortisone treatment. However his condition did not improve. According to Mr. Beatty from then until he was hospitalized in February he was in constant pain, was bent double and couldn't straighten up. (He also could not urinate but the plaintiff's witness testified that the kidney problems were not related to the back problems.)

On February 18, 1972, he aggravated the condition of his back when he slipped on ice and he then was admitted to the hospital. X-rays taken at this time revealed, for the first time, a herniated disc at L4-L5. There was an attempt to dissolve the disc by chemonucleolysis. This was unsuccessful. A laminectomy was later performed and at the time of the trial (March 1974), a spinal fusion had been scheduled but had not been performed. During this period, the plaintiff was also hospitalized in 1973 because of pain in the upper stomach area and in 1974 he underwent prostate surgery. Neither hospitalization was related to the accident.

The medical expenses incurred by the plaintiff at the time of the trial were $6,510.17. The estimated expense of the pending spinal fusion was $4,000 to $5,000.

Dr. Jabaay, the orthopedic surgeon who operated on the plaintiff testified that it was his opinion that the plaintiff would, with a good

recovery, always have pain because of nerve damage and that furthermore even if the results of the surgery were good, it would be very difficult for Mr. Beatty to go back to heavy construction type work. Dr. Smith, the defendants' witness, however testified that there was less limitation than the plaintiff appeared to be claiming (furthermore the plaintiff was resistant to motion when he was examined) and that there was no atrophy in the leg calves although atrophy would be expected if there was any significant nerve involvement with respect to the herniated disc. Dr. Smith also testified that the herniated disc could not have been caused by the automobile accident as the onset of the symptoms in a force sufficient to rupture the disc would tend to bring about almost immediate pain and that he did not think that Mr. Beatty could have had such pain since June 1971. Also one would expect the X-rays of November 1971 to have shown something. However, the jury answered the special interrogatory whether the accident of June 4, 1971, was the proximate cause of the plaintiff's injuries and subsequent treatment "yes" and we are bound by that answer.

Before the accident, Mr. Beatty who was 56 at the time of the accident had been working for Mr. Minkel as a concrete finisher. Since November 1970 he had worked full time for him as the weather permitted and his income for the first six months of 1971 for that job was $5,663. Before November 1971 the plaintiff had not been working full time for him. Mr. Beatty also had a small construction business out of his home. While Mr. Minkel indicated that there would have been jobs available for Mr. Beatty every month throughout 1971, weather permitting, there was also evidence that Mr. Beatty had during the first part of 1971 been lining up side jobs which he did not do while he was working full time for Mr. Minkel—these jobs were finished up after the accident supposedly by the plaintiff's son.

The plaintiff claims that he has been unable to work since the accident but the evidence is not undisputed. Immediately after the accident Mr. Beatty continued to work full time for Mr. Minkel, except on days he went to see the doctor. However, he was put on light duty—that is, supervision and lay out work. Before the accident he had done everything including supervise. Mr. Beatty quit his job at the end of June, and according to his testimony has not worked since except to supervise the work his sons Danny, Larry and Robert did.

In spite of his claim that he did not work following July 1, 1971, the plaintiff's own tax records showed that the gross receipts and the expenditures in the family business amounted to approximately the same amounts for the years 1971 and 1972. (Mr. Beatty testified the income was from work done before the accident or work done by his sons.) Moreover, 27 invoices for cement were introduced from Naperville

Ready Mix showing that the cement in question on each invoice had been charged to the plaintiff's account during 1971-1973. The plaintiff testified that the reason for the cement was the fact that his sons were completing the jobs which he had previously lined up. Larry Beatty at the trial said he had worked for his father but could not remember when. At his deposition, he could not remember if he had worked for him. At the trial Robert Beatty said he did not work for his father in 1971 but might have in 1972; in his deposition he said he had not. The plaintiff admitted that Danny Beatty had had a full-time job and if he had worked for the plaintiff in 1971 it was once when he was off a Saturday or something like that or a Sunday.

Mr. and Mrs. Russell testified that Mr. Beatty contracted in August or September 1971 to pour some concrete for an addition to their home. Since they work they were not home most of the time but when they were, they saw only Mr. Beatty and an older man, except once when Mr. Beatty's sons came with him and picked up some forms and left. Neither noticed anything abnormal about his physical condition and he appeared to walk in a normal fashion.

Mr. Harper testified that he contracted work to Jim Tracy. When he saw Mr. Beatty whom he did not know, on the job, he asked what he was doing and he was told "he is doing it for Jim." However, Mr. Harper did not remember if Mr. Beatty had a tool or instrument at the time. Like the Russells, Mr. Harper did not notice anything abnormal about the plaintiff's appearance.

A neighbor of Mr. Beatty testified that almost two years after the accident a garage was constructed on the plaintiff's land and that she saw the plaintiff doing some painting and carpentry work on it. He did, however, walk as if it were painful and sometimes stopped.

■■ The only question before the court is whether the trial court properly granted the motion for a new trial. The grounds for a new trial are limited to the one question, namely, was the amount of damages allowed by the jury adequate and sufficient in view of the evidence. If the damages allowed by the jury were clearly inadequate the trial court has the right and duty to grant a new trial.

In passing on a motion for a new trial, the trial judge has a greater latitude in passing on questions of fact than on questions of law, and a reviewing court will not reverse a ruling on a question of fact unless a clear abuse of discretion is shown. (*Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 199 N.E.2d 256.) The matter of granting a new trial is in the sound discretion of the court. *Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 199 N.E.2d 256; *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 142 N.E.2d 717.

■■ However, the rule that the trial court has broad discretionary

powers and that his action will not be reversed on appeal except in case of clear abuse of discretion is not absolute. There are numerous cases that hold that the order of the trial judge granting a new trial was erroneous. As was stated in *Buer v. Hamilton* (1964), 48 Ill. App. 2d 171, 174-75, 199 N.E.2d 256:

"Reviewing courts are reluctant to reverse the trial judge in granting a new trial, but where the appellate tribunal feels that the trial judge has invaded the constitutional prerogative of the jury and thereby committed an abuse of discretion, reviewing courts have not hesitated to reverse the order. *Stobbs v. Cumby*, 9 Ill. App. 2d 138, 144, 132 N.E.2d 448; *Stilfield v. Iowa-Illinois Gas & Elec. Co.*, 25 Ill. App. 2d 478, 490, 167 N.E.2d 295.

The focal point of judicial review is reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which is considered most reasonable. That conclusion, whether it relates to negligence, causation, or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. *Tennant v. Peoria and P.U. Ry. Co.*, 321 U.S. 29, 88 L. Ed. 520; *Stilfield v. Iowa-Illinois Gas & Elec. Co.*, 25 Ill. App. 2d 478, 167 N.E.2d 295; *Dowler v. New York Cent. & St. L. R. Co.*, 5 Ill. 2d 125, 125 N.E.2d 41; *Pitrowski v. New York Cent. & St. L. R. Co.*, 4 Ill. 2d 125, 122 N.E.2d 262.

Unless the finding of the jury on a question of fact is so unreasonable, arbitrary and unsupported by the evidence, that it would justify the trial judge in granting a new trial, the finding of the jury is binding upon the court under the facts. *Stilfield v. Iowa-Illinois Gas & Elec. Co.*, 25 Ill. App. 2d 478, 490, 167 N.E.2d 295."

In this case the verdict exceeded the amount of the medical expenses (both known and estimated) by over $28,000. The plaintiff contends that since he was unable to work after the accident and would be unable to return to work until a year after the spinal fusion his loss of income was at least $41,600, and even then he would be partially disabled. But in fact there was almost no evidence as to what the plaintiff's yearly income would have been; the mere fact that he earned $5,600 in the first six months of 1971 is not, considering the nature of the job, sufficient. Moreover, the jury was not required to believe the plaintiff's testimony

either that he did not work after June 1971 or that he could not have worked on certain projects in the fall of 1971, ordered cement for various jobs, and that later on he worked on his own garage. (Compare *Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 234 N.E.2d 329.) Furthermore it was conceded that the plaintiff was able to supervise projects. The jury may have concluded that the plaintiff was never more than partially disabled and that the $28,000 award may have been for the decrease in earning capacity caused by the accident plus any pain and suffering it found, keeping in mind that the plaintiff at the time of the accident was 56 and had osteoarthritis and advanced degenerative disc disease.

■■ Having considered the evidence this court cannot say that the verdict of the jury is unreasonable, arbitrary or unsupported by the evidence. The verdict is well within the range of the testimony as to damages and injuries. The same rule that says a reviewing court will not reverse the trial court except in clear cases of abuse of discretion also applies to the trial judge in passing on a motion for a new trial. The trial judge has no right to interpose his judgment for that of the jury on the question of fact presented, unless that judgment is unreasonable, arbitrary and unsupported by the evidence. And particularly where, as here, no error is claimed in the instructions or in the exclusion or admission of evidence, over objection, it is axiomatic that the court should be reluctant to disturb the jury verdict, the assessment of damages being particularly within the jury's province. (*Zielinski v. Goldblatt Bros., Inc.* (1969), 110 Ill. App. 2d 248, 249 N.E.2d 245.) On the whole record, we do not believe that the trial judge had the right to interpose his judgment for that of the jury on the question of damages. The order granting a new trial should not have been entered.

The court having granted the defendant the right to appeal, the order granting a new trial is reversed and the cause is remanded to the trial court with instructions to set aside the order granting a new trial, and to enter judgment on the verdict for the plaintiff and against the defendants in the amount of $40,000 and costs of suit.

Reversed and remanded with directions.

GUILD, P. J., and SEIDENFELD, J., concur.