Nick Acquaviva, Appellee, v. Madison County Mutual Automobile Insurance Company, Appellant.

432 

 Opinion filed May 8, 1936.

WARNOCK, WILLIAMSON & BURROUGHS, of Edwardsville, for appellant.

JOHN B. HARRIS, of Granite City, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

On the 20th day of August, 1929, Bernard Acquaviva, son of appellee, made arrangements for a party consisting of five girls, himself and two other boys to take a trip that evening from Granite City to a dance at Alton. Young Bernard took his father's car, which was a new Ford, for the purpose of conveying the party to Alton and back. Bernard drove the car. The party went to the dance and started home. On the way home, somewhere near the City of Wood River, the car ran off of the road and struck a tree, injuring most of the passengers and killing Wilma Mae Hutchings. The car immediately caught fire and was totally destroyed. The evidence tended to show that some few miles distance before the destruction of the car, young Bernard had turned the wheel over to Robert Braden, another of the passengers, and had taken a seat in the tonneau of the car.

The next day appellee informed appellant of the destruction of his car and said that his son, Bernard, was driving it, and that he was 16 years of age. Appellant sent its investigator to Granite City within two days thereafter and learned to its own satisfaction that Bernard Acquaviva was a person under the age of 16 years. Different stories were related having to do with the age of Bernard before the matter got into court, but during the trial it was settled to the satisfaction of everybody that Bernard had not yet reached his sixteenth birthday.

Appellee carried an insurance policy with appellant covering his car. The policy was one of complete coverage of such damage as accrued to the car and injuries to other persons for which appellee might be liable. Said policy contained, among other things, clause E, which provided that the contract did not cover loss caused by or occurring while the automobile was "operated by, or while in charge of any person under the age of sixteen years." When appellant learned that Bernard was under the age of 16 years it denied liability and refused to pay for the destruction of the car, or to defend appellee against any suits brought for damages to the other persons or to pay any expenses of appellee incurred by him in and about defending suits brought against him on account of injuries to the other persons riding in the car that night.

The evidence shows that the value of the car destroyed was $583.68 and that appellee had been to the expense of $67.95 by way of expenses and $300 attorneys' fees in and about defending himself against the suits above referred to. Two suits were brought for these respective items and were consolidated by the court and tried as one case. Numerous pleas were filed to the declaration. The declaration set up in substance the facts as above related and alleged liability of appellant for said amounts on its insurance policy. One

trial was had which resulted in a verdict for appellee, which verdict was set aside by the trial court. Another trial, the case at bar, was had resulting in a verdict for appellee for $941. Before entering judgment, the court took into consideration interest at five per cent on the $573 valuation of the car, which the jury had neglected to include, thereby raising said verdict to the sum of $1,078.70, upon which judgment was rendered after overruling motions for judgment *non obstante veredicto* and for a new trial.

The case fairly involves two major questions: (1) Was Bernard Acquaviva driving the car or in charge thereof at the time of the destruction. (2) Was Braden, who appellee claims was driving the car at the time of the destruction, in charge thereof within the meaning of paragraph E of the contract as above stated?

It is claimed by appellant that even conceding that Braden was driving the car at the time of the destruction, though it does not concede it, still he was not in charge of the car, but that Bernard Acquaviva was the person who was in charge of the car. We are asked to hold as a matter of law that even though Braden may have been driving the car yet under the circumstances, Acquaviva was in charge thereof, and that, therefore, appellant is not responsible under its contract. This involves the question of what it means to be ''in charge'' of an automobile.

In a larger sense it might be said that Bernard was in charge of the car; he had taken his father's car, organized the party, driven the car to Alton and most of the way home, and had turned it over to Braden at Braden's request, and still controlled and might have bossed the handling thereof.

In a restricted sense Braden was the one who controlled the starting and stopping, the driving, the speed of the car, the manner of handling it and the

care of the car, in traveling; he was in a position where he himself might have been sued for the injuries accruing to the passengers for wilful and wanton misconduct in so driving. In that sense Braden was in charge of the car, and we are of the opinion that the trial court rightly submitted to the jury the question of fact as to whether or not young Acquaviva was in charge of the car, or whether Braden was in charge thereof.

There is a dearth of authority bearing upon this question. In *Houston Oil & Transport Co. v. Aetna Ins. Co.,* 36 F. (2d) 69, it was said that the dictionary meaning of the words "in charge thereof" is "in the care or custody of, intrusted with the management or direction thereof." This case also says that that is the common sense definition of the term. This does not throw great light on the subject. The authority more nearly in point it seems to us is the case of *Steffe v. Old Colony R. Co.,* 156 Miss. 262, where the court held that the brakeman who had the responsibility of giving a signal for the purpose of preventing collision was in charge of the train in the sense that the responsibility was his.

The court instructed the jury that it was admitted that Bernard Acquaviva was under the age of 16 years at the time of the accident, and that if the jury believed from the evidence that at the time of the accident the said Bernard Acquaviva was driving the automobile or that he was in charge of said automobile, then under the terms of the policy the plaintiff was not entitled to recover, and that they should find the issues in favor of the defendant. We think this instruction fairly presented to the jury a proper issue of fact. It is next contended that the verdict is against the manifest weight of the evidence; that it fails to show by the requisite weight of the evidence that Braden was driving the car at the time of the injuries in question. Five of the witnesses who were present on the occasion

testified that Braden was driving; one testified that young Acquaviva was driving. These five witnesses who testified for appellee were impeached, some to a more decided degree than others, by statements which they had made out of court, both under oath and not under oath, contrary to what they had testified to on the trial. One of the parties testified that Acquaviva was driving the car. Appellant bases its contention that appellee did not meet the burden of proof upon the fact that all of his witnesses were so impeached. The court gave to the jury the following instruction: "If you believe from the evidence that any witness or witnesses in the case have knowingly and wilfully sworn falsely to any material fact in issue, then you have the right to disregard the entire testimony of such witness except in so far as it may be corroborated by other credible evidence or by facts and circumstances proved on the trial." This was a proper instruction. The court could go no farther; the court could not tell the jury that they must not regard the evidence of such witnesses as have been impeached, for the rule is that even though a witness may have been successfully impeached, yet if the jury notwithstanding such impeachment still believe the witness is testifying truthfully, it may act upon the evidence of such witness. "Former inconsistent statements effect credibility and not competency of witnesses." *Fuhry v. Chicago City Ry. Co.,* 239 Ill. 548. If, notwithstanding impeaching evidence, the jury still believes the testimony of a witness to be true, they cannot disregard it. *Matthews v. Granger,* 196 Ill. 164; *Roy v. Goings,* 112 Ill. 656. Impeachment does not render the testimony of a witness nugatory; the credibility and weight, if any, to be given such witness still rests within the province of the jury. Obviously in this case the jury did believe the testimony of these witnesses notwithstanding their impeachment.

Complaint is made by appellant that the court disregarded another part of the contract which provided that if any attempt, after loss is made by the insured to deceive the insurer it will void the contract. The court took the position that if young Acquaviva were in charge of the car there could be no liability against appellant, and if Braden were in charge of the car appellant was liable in any event; so that it was immaterial whether appellee attempted to deceive appellant as to the age of his son, Bernard. We think that position was properly taken by the court; if there was deception, and it was such, as it turned out to be, as to deceive on a matter that was wholly immaterial, it could not vitiate the policy.

It is claimed that the trial court made a prejudicial statement with reference to impeaching testimony of one of the witnesses to the effect that the witness was not bound by her statement. Without deciding the effect of this in a close case we are inclined to hold that it was not such as would warrant disturbing the verdict of the jury in this case.

We find no reversible error in this record and the judgment of the trial court is therefore affirmed.

*Judgment affirmed.*