Clarence Countryman, Administrator of Estate of Clarence Countryman, Jr., Deceased, Plaintiff-Appellee, v. Daniel Sullivan, Defendant-Appellant.

Gen. No. 10,506.

Opinion filed September 14, 1951. Released for publication October 2, 1951.

KNIGHT, HAYE & KEEGAN, of Rockford, for appellant.

CLIFFORD A. PEDDERSON, of Rockford, for appellee.

MR. JUSTICE ANDERSON delivered the opinion of the court.

This case arises out of an intersection accident occurring August 30, 1949. A motor scooter operated by plaintiff's intestate and an automobile operated by the defendant collided at a street intersection in Belvidere, Illinois. The suit is brought under the Injuries Act for the alleged wrongful death of Clarence Countryman, age about fifteen years.

The complaint is in two counts. Count one charges the defendant with various negligent acts. Count two charges willful and wanton misconduct on the part of the defendant. It specifically charges that the defendant willfully and wantonly operated his automobile as follows: while under the influence of liquor; without proper observation of plaintiff's intestate; and at a high and dangerous rate of speed. Defendant denied all charges of negligence and willful and wanton misconduct.

The defendant's motion for a directed verdict at the close of all the evidence was denied and the case went to the jury on both counts. The jury returned a general verdict for $7,000. Defendant's motions for judgment notwithstanding the verdict and for a new trial were denied.

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■

■ The verdict being general must be sustained by the count charging willful and wanton misconduct (*Trumbo v. Chicago, B. & Q. R. Co.*, 389 Ill. 213).

It appears from the record that Clarence Countryman, age about fifteen years, was operating a motor scooter in a southerly direction on Caswell Street. Caswell Street is an improved street in a residential district and intersects Church Street. Defendant was operating his car in a westerly direction on Church Street. It was daylight. The weather was clear. Caswell Street is thirty-six feet wide. Church Street is forty feet wide. There is a decline on Caswell Street approaching the intersection from the north. There is an incline on Church Street approaching the intersection from the east. There is a hedge two and one-half feet to three feet high on the north-east corner of the intersection, said hedge being located to the north of the sidewalk running east and west on the north side of Church Street and to the east of the sidewalk running north and south to the north-east side of Caswell Street. The motor scooter was low and grey in color. The evidence is conflicting as to the point of impact but it appears that it occurred in the north-west quadrant of the intersection. Clarence Countryman, Jr., plaintiff's intestate, died as a result of the accident.

Two witnesses testified that they saw the accident: one testified for the plaintiff and one for the defendant. Looking first to the plaintiff's evidence: witness Verna Rice testified that she was driving east on Church and as she reached the intersection of Church and Caswell Streets, she was on the right or south half of the street and noticed both plaintiff's intestate and defendant approaching the intersection. She stopped her car. She said that the scooter was approaching from her left and was on its own side of Caswell Street about a foot or two west of the center line. It was coming

down a small hill and seemed to slow down just before the impact. She had noticed defendant's car approaching from the east on Church Street, but had paid no particular attention to it. She had no opinion as to its speed but stated that it did not stop. The impact occurred and both the scooter and the plaintiff's intestate landed somewhere behind her. Neither the boy, the scooter, nor the defendant's car made any contact with her car. Defendant's car kept going for some distance behind her after the impact and before it stopped.

Chief of Police Stone testified that he arrived at the scene of the accident acting in his official capacity and that the Countryman boy had been removed but that the defendant was still present. Certain measurements were made including measurement from a pile of debris in the intersection, which was assumed to be the point of impact, to the defendant's car. This distance was 124 feet. This witness testified that there were no skid marks present and that he talked to the defendant. He said that he smelled alcoholic liquor on his breath but that he did not think the defendant was intoxicated but was nervous, shaky, and in a state of shock.

Walter Graness testified that he arrived after the accident occurred and that he observed the defendant was shaking a great deal and that he dropped his billfold when a policeman asked him for his driver's license.

Leo Knott testified that he was a police officer and arrived at the scene of the accident with Chief of Police Stone and helped take the measurements. He said that he saw the defendant and that he appeared dazed and shaky and dropped his billfold when asked for his driver's license. On direct examination he testified that he could not state whether or not the

374

defendant was under the influence of intoxicating liquor.

The following witnesses testified on behalf of the defendant.

David Grimm, age twelve, testified as an occurrence. witness for the defendant. This witness testified that he was about two hundred feet south of the intersection on the west side of the street on a porch. He stated that he was looking north and saw the motor scooter and watched it for about fifteen to thirty seconds as it came down the street. The scooter was going maybe under thirty miles an hour. The scooter got to the intersection, started to turn right and crashed into the fender of the defendant's car. Young Grimm first noticed the defendant's car when it was stopped at the corner and the defendant then started the car and was almost all the way across when the motor scooter crashed into him. He said that he did not see the Rice car.

Albert Petite testified that he arived two minutes after the accident occurred and that when he arrived the boy was lying about even with the sidewalk running parallel to the west edge of Caswell Street and about in the center of Church Street. He did not remember exactly where the scooter was lying but it was in the street and he helped drag it about twenty feet over to the curbing. He talked to the defendant at a distance of two feet and could smell no odor of liquor and in his opinion he was not intoxicated but was very normal.

Allan Clarke testified that he arrived three or four minutes after the crash. He went to the hospital and upon returning examined the defendant's automobile. There was a dent on the right-front fender about one foot long and two inches deep. This dent started at a point about four inches back of the headlight. Clarke

drove the defendant home in the defendant's car at the request of the defendant's father-in-law and he did not notice the odor of liquor on the defendant but he was nervous and shaky.

Hazel Grimm testified that she heard the crash and ran to the corner and that someone told her to call a doctor and the defendant then went toward the house on the corner and in her opinion he was in a state of shock or a highly nervous condition.

Charles Ough testified that he lived one-half block east of the intersection on Church Street and the defendant had brought him home and let him out of the car at his house just before the accident occurred and the defendant was not intoxicated. He worked for the defendant and left the plant about 4:30 p. m. and in his opinion he got home about 5:40 p. m.

The defendant was tendered as a witness to testify in his own behalf, but on objection by plaintiff, who sues as administrator, was properly not allowed to testify under the provisions of section two of the Evidence Act. (Illinois Rev. Stat. 1949, chap. 51, par. 2 [Jones Ill. Stats. Ann. 107.068].)

Various photographs, surveys, and testimony describing the intersection, about which there is no dispute, and testimony concerning the location of the scooter, description of the debris on the pavement, and the slope of the intersecting streets, were also introduced in evidence. The foregoing is the evidence pertinent to the issues in this cause.

The question presented here is not whether or not the defendant was guilty of ordinary negligence, but whether he was guilty of willful and wanton misconduct. Negligence and willful and wanton misconduct are not synonymous. Negligence and willfulness are as unmixable as oil and water. (*Bartolucci v. Falleti*, 382 Ill. 168.) The law is well settled that whether or not a defendant is guilty of willful and

wanton misconduct ordinarily is a question of fact for the jury, and unless its finding is manifestly against the weight of the evidence, the reviewing court will not disturb their verdict. (*Bliss v. Knapp,* 331 Ill. App. 45; *Heil v. Kastengren,* 328 Ill. App. 301.)

 There is no field of the law where the decisions of the courts are in as much conflict as in the cases wherein the courts have attempted to define willful and wanton misconduct or negligence. The courts have stated many times that each case must depend upon its own peculiar facts to determine whether the act charged is willful and wanton. (*Lane v. Bobis,* 340 Ill. App. 10; *Paul v. Garman,* 310 Ill. App. 447; *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464.) The Supreme Court in *Bartolucci v. Falleti, supra,* defines what willful and wanton misconduct is. The court says on page 174 of the opinion: "Plaintiff's right to recover is, consequently, dependent upon proof that the accident causing the injuries was occasioned by defendant's wilful and wanton misconduct. Ill will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness. *Streeter v. Humrichouse,* 357 Ill. 234; *Jeneary v. Chicago and Interurban Traction Co.,* 306 id. 392." Keeping these rules of law in mind, it is necessary to analyze the evidence to determine the answer to the question. Assuming that the jury believed all the

testimony of the plaintiff's witnesses and all the testimony of the defendant's witnesses in favor of the plaintiff's case, with all inferences and deductions that may be lawfully drawn therefrom, and did not believe the testimony of the defendant's witnesses which was in the defendant's favor, is the verdict of the jury against the manifest weight of the evidence?

Verna Rice who saw the accident testified that she saw the scooter approaching from her left on its own side of·the street, coming down a small hill; that she had noticed defendant's car approaching from the east on Church Street. She paid no particular attention to it, but in her opinion it did not stop, and the defendant's car kept going for some distance after the impact before it stopped. The other witnesses who testified for the plaintiff did not see the accident, but saw the defendant after the accident and where his car and the scooter were located. There were no skid marks on the pavement. Defendant had intoxicating liquor on his breath, but none of the witnesses testified that the defendant was intoxicated or under the influence of intoxicating liquor. A number of the witnesses testified that the defendant was nervous and in a state of shock. This, of course, might well be true after he was involved in the serious accident in question. The evidence on behalf of the plaintiff further disclosed that there was a dent in the fender of defendant's car. How it got there or when it was made is not disclosed from the testimony. The evidence further discloses that the scooter was badly wrecked, but whether it was wrecked by running into the fender of defendant's car caused by its own momentum or by the momentum of the defendant's car is not disclosed from the evidence. There is no evidence of excessive speed. There is evidence only by inference that the defendant intended to run into the scooter. This inference would not follow that the defendant cruelly in-

378

tended to run into the scooter on which the boy was riding.

Plaintiff further charged in his complaint that the defendant either failed to keep a proper lookout or looked and failed to see that which he was charged to see, and was guilty of willful and wanton conduct in this regard. There is no evidence as to whether or not the defendant actually looked to his right. The terraine, slope of the streets, height of the hedge, the color and size of the motor scooter are all factors which preclude failure to see being willful and wanton misconduct in this case.

From an examination of the whole record and the peculiar facts in this case, it is the opinion of this court that the verdict of the jury finding the defendant guilty of willful and wanton misconduct is manifestly against the weight of the evidence and should not be permitted to stand. The cause is reversed and remanded for a new trial.

*Reversed and remanded.*