**John Kasper, Plaintiff-Appellant, v. Leo J. Curran, Defendant-Appellee.**

**Gen. No. 11,320.**

Second District, First Division.

February 16, 1960.

Released for publication March 4, 1960.

Burton Y. Weitzenfeld, John F. McClure, and Edward J. Griffin, of Chicago (Lederer, Livingston, Kahn, and Adsit, of counsel) for plaintiff-appellant.

Brittain, Morgan, and Brittain, of Elgin, Petersen and Goldsmith, of Aurora (W. Ben Morgan and David D. Dyer, of counsel) for defendant-appellee.

JUSTICE SPIVEY delivered the opinion of the court.

The Circuit Court of Kane County granted defendant's motion for judgment notwithstanding the verdict. An appropriate judgment on the complaint was entered for the defendant and against the plaintiff, from that judgment the plaintiff appeals.

The amended complaint was in two counts ordinary negligence and wilful and wanton misconduct. Defendant answered and counterclaimed in negligence. Defendant further answering the negligence count alleges that he was operating an emergency vehicle and that he was acting in a governmental capacity and therefore immune from liability, and further answering the wilful and wanton count alleges that he was operating an emergency vehicle.

The jury returned a general verdict finding the issues for the plaintiff and assessing his damages at $5,000. In answers to a special interrogatory, the jury found the defendant guilty of wilful and wanton misconduct. The jury further found by verdict that the counter-defendant was not guilty.

██ The verdict, being general in form, must be sustained on the count charging wilful and wanton misconduct, viz: Count two of the amended complaint. Ashton v. Sweeney, et al., 350 Ill. App. 135, 112 N.E.2d 183, and Countryman v. Sullivan, 344 Ill. App. 371, 100 N.E.2d 799.

The verdict being general, it is unnecessary to discuss what has been urged by the parties relative to

defendant's liability for ordinary negligence. Neither party has suggested that defendant would not be liable for wilful and wanton misconduct even while operating an emergency vehicle in a governmental capacity. With this premise in mind we have examined the evidence to determine whether there is any evidence fairly tending to prove the wilful and wanton misconduct count alleged in plaintiff's amended complaint.

■ The yardstick to be applied has been announced in a host of cases and is fairly stated in Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847, wherein it was said,

"A motion for directed verdict or for judgment notwithstanding the verdict presents the single question whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove the material elements of the case. Gorczynski v. Nugent, 402 Ill. 147; Weinstein v. Metropolitan Life Ins. Co., 389 Ill. 571." The court in that opinion further said they were not at all concerned with the weight or credibility of the evidence.

To like effect, Hughes v. Bandy, 404 Ill. 74, 87 N.E. 2d 855, wherein it was also stated, "No contradictory evidence, or other evidence of any kind or character, will justify a directed verdict or a judgment for the defendant notwithstanding the verdict, except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense." (Citing cases.)

It was said in McCormick v. Kopmann, 23 Ill.App. 2d 189, 161 N.E.2d 720, in passing upon a motion to dismiss, "Proof unfavorable to the plaintiff, even though the plaintiff herself introduced that proof, cannot be considered. The determination to be made is whether there is any evidence (all unfavorable evi-

dence excluded) upon which the jury could base a verdict for the plaintiff under the count in question, and if there is, the motion as to that count must be denied and the issues submitted to the jury."

There is considerable conflict in the occurrence evidence; however, this Court like the trial court in considering the propriety of entering a judgment notwithstanding the verdict, does not weigh the evidence, consider its credibility nor test its preponderance. Whether or not we differ with the jury's conclusion is of no moment so long as we are able to say that reasonable persons might differ in their conclusions.

Plaintiff Kasper drove his truck out of a residence driveway on the west side of State Route 31 turning northward. At this point Route 31 was a four-lane highway.

Kasper testified he stopped his truck about a foot from the west edge of the pavement, looked to the north and the south, and saw cars approaching in both lanes from each direction about 1,000 feet away. He did not see a red signal nor did he hear a siren. He then crossed over to the outer northbound lane without again looking to the south and proceeded northward until his truck was struck in the rear by the defendant's car. He testified the speed limit at that point was 40 miles per hour.

Mrs. Frank Harding, testifying on behalf of plaintiff, stated that she was proceeding southward on Route 31 north of the place of impact; that she saw the plaintiff's truck stopped in the driveway for a short time, possibly a minute or two; that plaintiff pulled out and at that time there were no oncoming northbound cars for a distance of four blocks; that plaintiff had cleared the southbound lane when she first noticed defendant's car in the outer lane about a half a block south of plaintiff's truck, which would be about 250 feet; that defendant's car was traveling

384

about 90 miles per hour; and that she did not remember seeing a red light, and when first observed did not hear his siren. She further stated that defendant's car struck the left half or quarter of the rear of plaintiff's truck and ricocheted across the road and struck her car which at that time had been pulled to the side of the road. On cross examination she stated that plaintiff pulled out of the driveway when defendant was 250 feet south of the driveway.

· George Maron, on behalf of plaintiff, testified that he was working in a corn crib some 200 feet from Route 31, that he heard the siren but not too loud, and that he heard the impact. He further stated that he saw a mark on the left hand side of the rear end of plaintiff's truck, and that the truck was lying on its left side seventy feet north of the driveway from which plaintiff emerged. He further stated that he did not hear the siren immediately before the impact.

On behalf of the defendant, James Stahl a deputy sheriff testified that he had a conversation with the plaintiff in the emergency room of the Community Hospital. He stated that plaintiff said he came out of the drive, looked north and south, and saw a squad car going north with a red light on; that he pulled out thinking he could make it, but apparently misjudged the defendant's speed; and that he probably should have waited.

At that time and place, 6:03 p. m. about two hours after the accident, Stahl in his own handwriting penned a statement on two pieces of paper which stated inter alia, "I pulled out to the highway, Rt. 31, stopped, and was going to turn north. I saw the squad car coming from the south with red light on. I thought I could get across before he got to where I was, but I guess I misjudged his speed. I should have waited. I think the squad struck me on the rear right side turning the truck over on its side, on the shoulder of the road, throwing me out of the

truck." To this statement the names of Dan Jamison (Kasper's attending physician) and Nurse Marian Thompson were penned by Stahl.

Kasper categorically denied making the statements attributed to him by Stahl and stated that he had no recollection of making a statement in the hospital, but stated the signature on Defendant's Exhibit One could be his. He further testified that he could not read printing or large handwriting without his glasses, and that he was wearing his glasses at the time of the accident but did not have them at the hospital.

Dr. Jamison testifying about the occurrence of Stahl's visit to the emergency room stated that Kasper was conscious; that he, Stahl, had a conversation with Kasper; that Kasper stated he stopped before going on the highway, looked to the right, saw a light; that he didn't recall whether Kasper said it was red; that Kasper felt he had plenty of time to pull onto the highway; that he apparently was struck on the left rear side of his truck; and that he was temporarily out and did not know what went on. Jamison further testified that he did not know if Kasper signed the statement but did not think he did because he was working on him all of the time.

Robert Erickson testified he was driving south on Route 31, and when he approached the top of Moosehart Hill, he observed the police car approaching with a red light about three or four hundred yards to the South. He stated that he did not know whether his windows were open, but that his radio was playing; that he heard the siren when defendant was fifty yards away; and that the defendant was traveling sixty-five or seventy miles per hour, and that it could have been eighty miles per hour. He went on to say that he observed through his rear vision mirror the truck pull out and the squad car starting to reduce speed, fishtailing and swerving slightly to the right and then come back toward the center of the road; that at the

time the squad car was veering from right to left, the truck was the width of one section of the pavement from the right side and the defendant seventy-five to one hundred feet from the truck and the right front of the squad car struck the right rear of the truck.

William R. Weber testified for defendant that he was driving north on Route 31 at forty miles per hour and observed the accident. He observed that he first saw the squad car in the inner lane with lights on through his rear vision mirror about six hundred feet behind him; and that a couple of seconds later he heard the siren but "It wasn't the loudest thing in the world, believe me." Continuing, Weber said when he was about three hundred feet from the driveway the squad car was about to pass him, and as he looked up, the plaintiff was approximately twenty-five or thirty feet behind the gate; that he came through the gate and did not stop at the highway at which time the squad car was about four hundred feet south; and that the squad car passed him and started to go from the inside to the outside lane and caught the truck almost in the middle of the right-hand side. He further stated that the defendant was traveling sixty-five miles per hour, or faster, but not much.

Defendant Curran, a deputy sheriff, testified that he was driving north on Route 31 in response to an emergency call to carry blood to a youngster who was then on the emergency table at the Community Hospital; that as he passed cars on a little upgrade he saw plaintiff coming out of the driveway headed in a northeasterly direction across the highway; that he took his foot off the gas and slowed down; that the plaintiff came on across the highway; that he swerved to the right and then to the left; and that he struck plaintiff at a point on the right side of the back of the truck when plaintiff's truck was diagonally across the two lanes. He stated that just immediately before

387

the accident he was using a Mars red light, a siren and his headlights were on. Curran on cross examination stated he did not keep the siren open at all times but used it when he deemed it necessary or whenever he saw something. He also said that he knew his lights were on because the traffic was heavier on his return trip; that he was traveling about sixty-five miles per hour; and that he first saw the truck when he was two hundred fifty feet from the driveway.

Curran also testified that he had a conversation with Kasper as they were wheeling Kasper into the hospital to the effect that we were mighty lucky; and in response to his question as to what were you thinking about, Kasper said, "I saw you and heard you but I thought I could beat you across the road." With reference to this alleged conversation, Kasper testified that he does not remember having talked with Curran.

Considering the evidence and tested by the standards applicable to judgments notwithstanding the verdict, we conclude that the trial court erred in allowing defendant's motion for judgment notwithstanding the verdict.

Reasonable persons might well conclude that the defendant in driving his squad car at a speed between sixty-five and ninety miles per hour under the conditions outlined by the evidence, or that he failed to equip his car with a siren that was audible under normal conditions for a distance of not less than five hundred feet, or that he failed to slow his car down by the application of his brakes, was guilty of wilful and wanton conduct.

By the same token, it might be said that the plaintiff was free from any wilful and wanton conduct when he stopped his truck, looked in both directions, and when seeing no traffic within 1,000 feet, seeing no red signal, or hearing no siren, then pulled his truck out upon the highway.

Defendant strongly contends that plaintiff's conversation with the defendant as he was being taken into the hospital and his statement given to Deputy Stahl, together with other evidence unfavorable to plaintiff and favorable to defendant, should preclude plaintiff's recovery.

■ The oral statements to Curran and the oral and written statements made to Stahl (denied by plaintiff) are impeaching in character only and go to the witness' credibility only. Acquaviva v. Madison County Mut. Automobile Ins. Co., 285 Ill. App. 431, 2 N.E.2d 334.

Defendant suggests that Chap. 95½, Sec. 150 and Sec. 120, Ill. Rev. Stat. 1955, exempts him from the prima facie speed limitations when responding to emergency calls or in the immediate pursuit of an actual or suspected violator of the law.

Chap. 95½, Sec. 150, requires the driver of an authorized emergency vehicle to sound an audible signal by bell, siren, or exhaust whistle. Chap. 95½, Sec. 212, Ill. Rev. Stat. 1955, authorizes emergency vehicle to be equipped with a siren, bell, or whistle capable of emitting sound audible under *normal* conditions from a distance of *not less* than five hundred feet, and requires the driver of such vehicles to sound such siren, bell, or whistle when necessary to warn pedestrians and other drivers of his approach.

The driving of an emergency vehicle over the prima facie speed limits is limited by Chap. 95½, Sec. 150 by a proviso which states, "This provision shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the street, nor shall it protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others."

■ The record presents a valid question of fact for the jury as to whether the defendant was operat-

ing a siren and, if so, was it audible for a distance of five hundred feet under normal conditions.

Tested by the limited standards binding on trial and appellate courts, we must conclude that the Circuit Court of Kane County erred in entering judgment notwithstanding the verdict for defendant. The judgment of the Circuit Court of Kane County for the defendant notwithstanding the verdict is reversed and the cause is remanded with directions to enter judgment for the plaintiff on the verdict.

Reversed and remanded with directions.

McNEAL, P. J. and DOVE, J., concur.