EMPLOYERS MUTUAL CASUALTY COM-
PANY, a Corporation, Plaintiff in Error,

v.

W. D. HART, Defendant in Error.

No. 41274.

Supreme Court of Oklahoma.

Jan. 6, 1967.

Rinehart & Morrison, Oklahoma City, for plaintiff in error.

C. H. Bowie, Pauls Valley, for defendant in error.

BLACKBIRD, Justice:

The ultimate issue in this appeal is whether a so-called "Family Automobile (insurance) Policy" issued by plaintiff in error to one J. M. Randol covered the liability of Randol's son, Kenneth, for a loss which the defendant in error, W. D. Hart, sustained in damages to his Corvair automobile from said auto's collision with a tree, which occurred while Kenneth, accompanied by Hart's daughter, Charlotte, was driving it.

Kenneth's liability for negligently driving and "wrecking" the automobile was established by a judgment in the amount of $2034.00, entered against him in Hart's favor during March, 1963, in the lower court's Cause No. 18958, styled "W. D. Hart, plaintiff vs. Kenneth Randol, a minor." After an execution issued on said judgment was returned unsatisfied, Hart sought to compel payment of the judgment under Randol's above-mentioned "Family * * *" policy, by garnisheeing plaintiff in error, hereinafter referred to as "garnishee", in the same styled and numbered cause.

In the answers to the interrogatories the garnishee was required to file in the case, it did not categorically deny that the policy it had issued to Mr. J. M. Randol was in force and effect on the date his son Kenneth wrecked Hart's auto, but it represented Hart as saying that said vehicle was then being operated without his consent; and, among other representations, claimed that, even if Kenneth was driving the car with said owner's consent, it was not liable for the car's destruction under its policy, which was attached to its answers to the interrogatories.

Hart, hereinafter referred to as "garnisher", thereafter elected to take issue with certain of the garnishee's answers to the interrogatories; and, after a trial of the issues by the court, and requests by both the garnisher and garnishee for certain findings of fact and conclusions of law, the court, after having taken the case under advisement, entered judgment for the garnisher, in accord with his own findings of fact and conclusions of law, to which more detailed reference will hereinafter be made. After the overruling of the garnishee's motion for a new trial, it perfected the present appeal.

The garnishee's arguments for reversal involve questions as to the proper application of the subject insurance policy's provisions as to its coverage of "non-owned" automobiles and/or property. The pertinent provisions are as follows:

"EMPLOYERS MUTUAL

Casualty Company.

(* * * HEREIN CALLED THE COMPANY)

"Agrees with the insured, named in the declarations made a part hereof in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to all of the terms of this policy:

"PART I—LIABILITY

* * * * * *

"COVERAGE A—BODILY INJURY LIABILITY:

"COVERAGE B—Property Damage Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

"A. * * *

"B. Injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage';

"PERSONS INSURED

The following are insureds under Part I:

(a) With respect to the owned automobile,

\* \* \* \* \* \*

(b) With respect to a non-owned automobile,

\* \* \* \* \* \*

(1) the named insured,

(2) *any relative,* but only with respect to a private passenger automobile \* \* \*,
*provided the actual use thereof is with the permission of the owner;*

\* \* \* \* \* \*

"EXCLUSIONS

This policy does not apply under Part I:

\* \* \* \* \* \*

(i) to injury to or destruction of (1) \* \* \* (2) property \* \* \* *in charge of* the insured other than a residence or private garage.

\* \* \* \* \* \*

"PART III—PHYSICAL DAMAGE

\* \* \* \* \* \*

"COVERAGE E—COLLISION

"To pay for loss caused by collision to \* \* \* *a non-owned automobile* but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto.

\* \* \* \* \* \*

"DEFINITIONS

'insured' means (a)

\* \* \* \* \* \*

(b) *with respect to a non-owned automobile,* the named insured and *any relative provided the actual use thereof is with the permission of the owner;*
'non-owned automobile' means a private passenger automobile \* \* \* not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile, *while said automobile* \* \* \* is in the possession or custody of the insured or *is being operated by him;*

\* \* \*." (Emphasis added)

Among other findings of fact and conclusions of law requested by the garnishee at the trial, were its requested finding "1" and conclusion "4" which, in substance, were respectively that Kenneth Randol was the "operator" of the Hart car at the time of the accident, and that the above quoted paragraph "(i)" of the policy's "EXCLUSIONS" under its "Part I" negates any obligation by the garnishee to the garnisher.

In its own findings of fact and conclusions of law, the trial court not only found that Kenneth Randol was the Hart car's "operator", but, among other things, specifically found that, on the date of the accident, the car was in Charlotte Hart's "possession", and that she had her father garnisher's permission to operate it, and had given Kenneth permission to drive it. On the basis of such findings, the court concluded that Kenneth was driving the car with Charlotte's express consent and her father's implied consent; but the court also concluded, among other things, that "under the terms of the policy in question" said father garnisher "is not excluded from recovering from the garnishee defendant for damages to his automobile incurred as a direct result of the actions of Kenneth Randol."

Garnishee's arguments are advanced under two propositions, as follows:

"I. Under the liability provisions of the policy, there is excluded 'property rented to or in charge of the insured other than a residence or private garage'."

"II. Under the 'collision' provisions of the policy, the company agrees to pay loss to a non-owned automobile 'provided the actual use thereof is with the permission of the owner'."

The garnishee's arguments under these two propositions leave much to be desired in enhancing its cause, because they place it in contradictory and conflicting positions. For example, under "II", above, its counsel

say that if said proposition is applicable, the trial court erred in his finding that the use of the Corvair was with its owner's permission. But Hart's permission of Kenneth Randol's use of said automobile was necessary before it could be considered to be "in" his "charge", within the meaning of that expression as used in the subject policy's above quoted PART I, Exclusion (i), referred to in garnishee's Proposition "I". This is demonstrated in Klock v. Allstate Insurance Co., 34 Misc.2d 990, 230 N.Y.S.2d 555, 558, where the court said:

> "An examination of Webster's Third New International Dictionary (1961) lends support to the definitions which have been uniformly adopted throughout other jurisdictions. 'In the charge or in one's charge' is defined as being 'into or under the control or custody'; 'custody' is defined as 'power or authority to guide or manage' and 'custody' is 'the act or duty of guarding and preserving (as by a duly authorized person or agency'. In none of this language is there any indication that mere physical possession constitutes being 'in charge of' an article or person; the words 'power', 'authority' and 'duty' all connote a degree of responsibility or right, *which is lacking in one who merely appropriates a vehicle to his own use without the consent or permission of the true owner.*
>
> \* \* \*." (Emphasis added)

Thus, if it were true (as garnishee contends) that the trial court's finding that Kenneth Randol was driving the Corvair with Mr. Hart's permission, was not sufficiently supported by the evidence, then Kenneth could not have been "in charge" of that car, so as to relieve garnishee of liability under the policy's PART I, COVERAGE B or "Property Damage Liability" portion. On the other hand, if the court's said finding is correct, then, according to MacDonald v. Hardware Mutual Cas. Co., 105 N.H. 458, 202 A.2d 489, the garnishee is not liable under that portion, or "Coverage", of Randol's said policy.

In further argument, under its Proposition "II" garnishee's counsel make reference to a deposition given before the trial by Mr. Hart that they were permitted to introduce in evidence and with which, they attempted to impeach testimony he gave on the witness stand. In their brief, counsel say it "is impossible to read" the deposition " \* \* \* and believe that he in fact authorized his daughter to permit anyone except a member of his family to use the car." The deposition was admissible, if at all, for the purpose of impeaching Hart (see Tit. 12 O.S.1961, § 447; Brown v. Marker, Okl., 410 P.2d 61, 66) or to show an admission against interest. Whether or not the deposition accomplished such purposes, and the weight to be given Hart's testimony, were peculiarly within the province of the lower court as the trier of facts. In this connection, see Acquaviva v. Madison County Mut. Automobile Ins. Co., 285 Ill.App. 431, 2 N.E.2d 334, 337. We have carefully examined Mr. Hart's deposition, and his testimony at the trial, including his explanation for the conflicts between the two, and we cannot say that the trial court erred in accepting the latter as the truth. Assuming, as the parties have throughout the trial, and accepting the trial court's finding as they apparently have in this appeal, to the effect that the issues in this garnishment proceeding were triable as if they arose in an action of equitable cognizance (see Overstreet v. Citizens' Bank, 12 Okl. 383, 72 P. 379, and 5 Am.Jur.2d, "Appeal and Error", § 720) but without deciding that they were (see Tit. 12 O.S.1961, § 865 and consider Millus v. Lowrey Bros., 63 Okl. 261, 164 P. 663, L.R.A.1918B, 336 in connection with Jackson v. General Finance Corp., 208 Okl. 44, 253 P.2d 166; see also Ruble v. Saretzke, 63 N.D. 631, 249 N.W. 716, 88 A.L.R. 1148, construing a statute similar to Tit. 12 O.S.1961, § 1177) we have weighed all of the evidence pertinent to the issue of whether or not Kenneth Randol was driving the Corvair (at the time of the collision) with its owner's permission, and cannot say that the trial court's findings

and conclusions relative thereto were clearly against the weight of the evidence. There is a marked contrast between the evidence in this case and the evidence in Oklahoma Farm Bureau Mutual Ins. Co. v. Bryant, Okl., 318 P.2d 430, and other cases cited in the garnishee's brief. Accordingly, said court's findings and conclusions as to that feature of the case must stand. See Hudson v. Lee, Okl., 393 P.2d 515.

That Kenneth Randol had Mr. Hart's permission to drive the Corvair on the day in question, and that, under the MacDonald Case, supra, the garnishee was not liable under PART I of the subject policy does not mean that the garnishee was not liable under PART III, COVERAGE E, or the "COLLISION" portion thereof. Under Proposition "II" of its brief, the garnishee says, however, that:

"Whether this provision is applicable to the situation is not involved in this case, because the plaintiff has proceeded, not under this contractual obligation, but upon the tort liability section of the policy."

Garnishee's counsel cite no authority, or part of the record, to support the quoted statement; and we find no merit in it. As will be remembered, Hart alleged in his petition and original pleading against Kenneth Randol that the destruction of the auto occurred in a collision with a tree; and the judgment he obtained against said defendant, recited that the court found that the allegations of said petition were true. While one of the insurance policies involved in the MacDonald Case, supra, was called an "Automobile Garage Liability Policy", it does not appear that there was any material difference between its provisions with reference to collision coverage, and those of the subject policy. There MacDonald was a "named insured", but under the hereinbefore quoted definition of "insured", the permitted driving of a "non-owned" automobile by Kenneth Randol, a "relative" of the "named insured", was covered by PART III, COVERAGE E of the subject policy, the same as his father's

driving of his own car is. Therefore, in our opinion, the garnisher, Hart, is here in the same position as the garage owner, Hopkins, was in the MacDonald Case; and we are of the opinion that his right to collect for the damages to his car from collision are the same as those there indicated for Hopkins.

The trial court's judgment was in accord with this opinion; and, as we have determined that it is neither clearly against the weight of the evidence, nor contrary to law, it is hereby affirmed.

DAVISON, WILLIAMS, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

JACKSON, V. C. J., concurs in result.

HALLEY, C. J., dissents.

HALLEY, Chief Justice (dissenting):

In my opinion, the majority view in this case is incorrect. The decision of the majority contains the following statement:

"We have carefully examined Mr. Hart's deposition, and his testimony at the trial, including his explanation for the conflicts between the two, and we cannot say that the trial court erred in accepting the latter as the truth. * * * we have weighed all of the evidence pertinent to the issue of whether or not Kenneth Randol was driving the Corvair (at the time of the collision) with its owner's permission, and cannot say that the trial court's findings and conclusions relative thereto were clearly against the weight of the evidence."

The pertinent portion of plaintiff's deposition and his testimony at the trial upon which the above quotation must be premised is as follows:

(From plaintiff's deposition, pages 14, 15 and 18.)

"Q. Now, what about other persons driving your car? Do you permit

it as a rule or do you not permit it?

A. It's a specific rule in my family that no one is to drive an automobile except the family. In other words, if Charlotte has the car, she has been specifically instructed that no one is to drive that automobile.

Q. That would be in keeping with the routine of your life?

A. Yes, but what I am stating is that Charlotte has strict instructions that no one was to drive that automobile except Charlotte.

Q. So to your knowledge, Dean, has Charlotte let other children drive any of the cars that she has driven of yours?

A. No, that is as far as I know, the first time she ever let them drive it. She violated a rule twice that morning * * *."

Then at the trial, in connection with the above, plaintiff testified as follows:

"Q. State whether or not Mr. Hart, that your little daughter had permission to let others drive the automobile?

A. She did.

Q. Now, you made a contrary statement in a deposition about that matter. What is your explanation of that?

A. * * * After I got home, I got to thinking about it; and so I first went in to see Charlotte and asked her if I ever told her that no one should drive the car. She said no, on the other hand that I said they could. I argued with her for a while and then I called my wife in, without divulging to her what the purpose of it was, and asked her the same question. She said you're just mistaken, you've never told her; and on the other hand you said she could. And after thinking about it, I was totally mistaken when I gave the deposition. I did give the child permission.

Q. To let anyone with her drive the automobile that she desired?

A. Yes.

Based upon the above conflicting testimony, the trial court held that the car was being driven by the Randol boy at the time of the accident with the implied consent of the plaintiff, and the majority opinion, as is mentioned above, approved the action of the trial court.

This case is controlled by our decision in Moral Insurance Co. v. Steves, 208 Okl. 529, 257 P.2d 836, wherein we made the following statement:

"When instituted in aid of execution as in this case, after an execution's return: 'No property found', garnishment proceedings are in the nature of an action in equity, and equitable principles apply."

The Moral Insurance case, supra, and the case at bar were both cases where trial by jury was waived, and they both covered garnishment proceedings after executions were returned with no property being found. If we are to apply equitable principles to proceedings of this type, and we should apply them, this court has the duty of reviewing the entire record of the case and if the judgment of the trial court is contrary to the evidence or contrary to the law, to reverse the case with directions to the trial court to enter the judgment which should have been entered. See Schaefer v. J. G. Stobaugh Supply Co., Okl., 285 P.2d 380; Brown v. Bivings, Okl., 277 P.2d 671, and Catlett v. Jordan, 206 Okl. 473, 244 P.2d 564.

In my review of the testimony of this case, I cannot escape the conclusion that plaintiff's testimony given by deposition, within a short period of time after the occurrence of the accident, is entitled to greater probative value than his testimony given at the trial. It is incredible to me that plaintiff could be mistaken in so important a matter.

His explanation of the reason for the change in the testimony as between the deposition and the trial testimony to me is not

convincing. It partakes too much of hindsight to be entitled to any weight.

I would reverse the trial court on the grounds that plaintiff failed to prove by clear, and cogent evidence that the Randol boy was driving the automobile with plaintiff's permission, either express or implied.

For the reasons set out above, I respectfully dissent.